MICHIGAN BELL TELEPHONE
COMPANY, Petitioner,

v.

UNITED STATES of America,
Respondent.

Nos. 76–2202, 76–2203.

United States Court of Appeals,
Sixth Circuit.

Argued June 23, 1977.

Decided and Filed Oct. 7, 1977.

Frederic L. Wyckoff, Detroit, Mich., for
petitioner in No. 76–2202.

Richard E. Zuckerman, Detroit Strike Force, United States Dept. of Justice, C. Stanley Hunterton, Philip M. Van Dam, U. S. Atty., Detroit, Mich., for respondent in No. 76–2202.

Conrad J. Ankiel, Frederic L. Wyckoff, Detroit, Mich., for petitioner in No. 76–2203.

C. Stanley Hunterton, Detroit Strike Force, U. S. Dept. of Justice, Richard E. Zuckerman, Philip M. Van Dam, U. S. Atty., Detroit, Mich., for respondent in No. 76–2203.

Before PHILLIPS, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

PHILLIPS, Chief Judge.

Two questions are presented on this appeal: (1) Does a United States district court have authority, upon showing of probable cause, to require a telephone company to install card drops and other mechanical or electrical devices designed to trap and trace incoming telephone calls? and (2) Does a district court have authority to direct the telephone company to perform manual tracing operations and provide the facilities and technical assistance necessary for the implementation of the order of the court, with all reasonable expenses incurred by the Company to be reimbursed by the Government?

We answer the first question in the affirmative on the authority of *United States v. Southwestern Bell Telephone Co.,* 546 F.2d 243 (8th Cir. 1976), *petition for cert. pending,* 45 U.S.L.W. 3638 (U.S. Apr. 22, 1977); *Application of the United States of America in the Matter of an Order Authorizing the Use of a Pen Register or Similar Mechanical Device,* 538 F.2d 956 (2d Cir. 1976), rev. sub nom. *United States v. New York Telephone Co.,* —— U.S. ——, 98 S.Ct. 364, 54 L.Ed.2d 376; and *United States v. Illinois Bell Telephone Co.,* 531 F.2d 809 (7th Cir. 1976). We answer the second question in the affirmative on authority of the foregoing Seventh and

Eighth Circuit opinions and the dissenting opinion of Judge Mansfield in the Second Circuit case, 538 F.2d at 963.

All three of the foregoing cases involved pen registers. We conclude that the same legal principles applicable to pen registers also control with respect to the devices for trapping and tracing telephone calls involved in the present case.

On May 24, 1976, the district court entered an order pursuant to 18 U.S.C. §§ 2510–20 (Title III), authorizing the United States to intercept wire communications and to install a pen register. These interceptions related to a continuing investigation of illegal gambling operations. According to an affidavit filed with the district court, the wiretaps confirmed the existence of an illegal numbers operation using the telephone lines. However, it became apparent to the Government investigators that more sophisticated techniques would be required because the gambling operators had established procedures thwarting the effectiveness of the wiretaps and pen registers. Investigators were unable to locate the central bookkeeper for the operation and other links in the organization. The gambling operators had established a routine whereby the monitored telephones never called the next higher links in the organization. Since a pen register only records the telephone numbers dialed by a monitored telephone, the use of the pen register to identify the central bookkeeper was impossible.[1] To complicate the investigation further, some messages were scrambled by an electronic device on one end and unscrambled on the other.

A motion was filed by the Government in the district court, supported by an affidavit executed by a special FBI agent, requesting an order authorizing the use of trapping and tracing equipment. District Judge Philip Pratt entered an order on June 3, 1976, granting the trace of two telephones

---

1. A pen register (or TTS 176 or TR 12) is a mechanical device attached to a telephone line, usually at a central telephone office. It records on paper tape (or by a digital readout) all numbers dialed from that line. The device neither monitors the contents of a call, nor indicates whether the outgoing call is ever completed. It does not identify the numbers from which incoming calls originated. *See United States v. Giordano,* 416 U.S. 505, 549, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (Powell, J., concurring in part and dissenting in part).

which had been included in the wiretap order of May 24. The district judge found probable cause to believe that individuals named in the order were committing offenses involving an illegal gambling business in violation of the laws of Michigan and 18 U.S.C. § 1955; and that the two telephones were being used in making outgoing calls and in receiving incoming calls in connection with the commission of the described offenses. The order provided as follows:

The Michigan Bell Telephone Company is hereby authorized and ordered to:

(a) Install card drops and other mechanical or electrical devices, and/or to perform manual tracing operations designed to trap and trace incoming telephone calls, to the extent technically possible, to the telephone bearing [the two designated telephone numbers].

It is further ordered that:

(b) The Michigan Bell Telephone Company is to perform manual tracing operations, to the extent technically possible, only when specifically requested to do so by Special Agents of the Federal Bureau of Investigation.

(c) It is further ordered that the Michigan Bell Telephone Company is to be reimbursed for all reasonable expenses incurred in complying with this Order.

It is further ordered that:

(d) The use of card drops, other mechanical or electrical devices, and manual tracing operations designed to trap or trace incoming calls to said telephones, shall continue until the identification of all telephone numbers from which incoming calls are made to said telephones leads to the identities of the subscribers of those telephone numbers, or for a period of twenty (20) days from the date of this Order, whichever is earlier.

It is further ordered that:

(e) The Michigan Bell Telephone Company may bring on a hearing regarding compliance with this Order upon oral notice to the Court and to C. Stanley Hunterton, Special Agent, United States De-partment of Justice, if it determines that compliance is disruptive of Michigan Bell Telephone Company services.

It is further ordered that:

(f) All information gathered by reason of the May 28, 1976, Order of this Court be turned over to Special Agents of the Federal Bureau of Investigation, and that upon the signing of the instant Order, the Order of May 28, 1976, shall be superseded by this Order.

On August 5, 1976, a similar order was issued by District Judge James P. Churchill.

Michigan Bell Telephone Company filed motions in the district court to quash the orders and for a stay. These motions were overruled after oral hearings. Michigan Bell appeals from both orders, and the two cases were consolidated for hearing in this court. We affirm.

## I.

■ Even though both orders now have expired by their terms, we hold that the appeal is not moot. This is a classic example of a controversy that is capable of repetition, yet evading review. *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911).

Prior to 1968, § 605 of the Communications Act of 1934 [2] served as a federal statutory restraint upon the Government's use of electronic surveillance in criminal investigations. The Supreme Court held that wiretap information obtained in contravention of this statute was inadmissible as evidence. *Lee v. Florida,* 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968); *Nardone v. United States,* 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937). This proscription was extended to condemn the use of pen registers. *United States v. Dote,* 371 F.2d 176 (7th Cir. 1966), *aff'g United States v. Guglielmo,* 245 F.Supp. 534 (N.D.Ill.1966); *United States v. Caplan,* 255 F.Supp. 805 (E.D.Mich.1966).

---

**2.** Act of June 19, 1934, ch. 652, § 605, 48 Stat. 1103.

In 1968 Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act (18 U.S.C. §§ 2510–20), providing statutory authorization for the use of electronic surveillance by law enforcement officers within the strict standards set forth in the Act. In addition, Title III amended § 605 of the Communications Act of 1934. 47 U.S.C. § 605. It is well settled that § 605, as revised by this amendment, no longer prohibits the use of pen registers.[3] It is equally clear that Congress excluded pen registers from the scope of Title III.[4]

In his separate opinion, concurring in part and dissenting in part, in *United States v. Giordano,* 416 U.S. 505, 553–54, 94 S.Ct. 1820, 1844, 40 L.Ed.2d 341 (1974), Mr. Justice Powell said:

The installation of a pen register device to monitor and record the numbers dialed from a particular telephone line is not governed by Title III. This was the conclusion of the District Court in the instant case and of the courts in *United States v. King,* 335 F.Supp. 523, 548–549 (S.D.Cal.1971), and in *United States v. Vega,* 52 F.R.D. 503, 507 (EDNY 1971). This conclusion rests on the fact that the device does not hear sound and therefore does not accomplish any 'interception' of wire communications as that term is defined by 18 U.S.C. § 2510(4)—'the *aural* acquisition of the *contents* of any wire or oral communication through the use of any electronic, mechanical, or other device' (emphasis added). Any doubt of the correctness of this interpretation is al-

layed by reference to the legislative history of Title III. The Report of the Senate Committee on the Judiciary in discussing the scope of the statute explicitly states '[t]he use of a "pen register," for example, would be permissible.' S.Rep.No.1097, 90th Cong., 2d Sess., 90 (1968).

Because a pen register device is not subject to the provisions of Title III, the permissibility of its use by law enforcement authorities depends entirely on compliance with the constitutional requirements of the Fourth Amendment. (Footnote omitted).

We conclude that the same rules applicable to pen registers also control the orders requiring installation of card drops and other mechanical or electrical devices designed to trap and trace incoming telephone calls entered by the district court in the present case. The equipment used in trapping and tracing telephone calls is similar to a pen register in that it does not accomplish an "aural acquisition" within the meaning of Title III. Traces, like pen registers, neither hear nor monitor conversations.[5]

The legislative history of Title III makes it plain that Congress never intended to subject traces to the rigorous standards of that legislation:

The proposed legislation is not designed to prevent the tracing of phone calls. . . . The proposed legislation is intended to protect the privacy of the communication itself and not the means of

---

3. *See Hodge v. Mountain States Tel. & Tel. Co.,* 555 F.2d 254, 258–61 (9th Cir. 1977); *Application of the United States in the Matter of an Order Authorizing the Use of a Pen Register or Similar Mechanical Device, supra,* 538 F.2d at 958–59; *United States v. Falcone,* 505 F.2d 478, 482 (3rd Cir. 1974); *United States v. Brick,* 502 F.2d 219, 223 (8th Cir. 1974). *Cf.* S.Rep.No. 1097, 90th Cong., 2d Sess. (1968), reprinted in [1968] U.S.Code Cong. & Ad.News, pp. 2112, 2196.

4. *Hodge v. Mountain States Tel. & Tel. Co., supra,* 555 F.2d at 257–58; *United States v. Southwestern Bell Tel. Co., supra,* 546 F.2d at 245; *Application of the United States in the Matter of an Order Authorizing the Use of a Pen Register or Similar Mechanical Device, su-*

pra, 538 F.2d at 959; *United States v. Illinois Bell Tel. Co., supra,* 531 F.2d at 812; *United States v. Clegg,* 509 F.2d 605, 610 (5th Cir. 1975).

5. For a technical discussion of the tracing or trapping process, *see State v. Hibbs,* 123 N.J. Super. 152, 301 A.2d 789 (1972). The pen register determines the telephone numbers of outgoing calls from a monitored telephone, while a trace determines the telephone numbers of incoming calls to the monitored telephone, or in effect traces the origins of these calls. Both the pen register and trace differ from a wiretap or intercept, in which the content of a telephone call is recorded.

communication. S.Rep.No.1097, 90th Cong., 2d Sess., 90 (1968), *reprinted in* [1968] U.S.Code Cong. & Ad.News, pp. 2112, 2178.

Applying the reasoning of the Second, Seventh and Eighth Circuits in the pen register cases cited in the first paragraph of the opinion, we conclude that orders entered by the district court in the present case were authorized by Fed.R.Crim.P. 41.

■ Fed.R.Crim.P. 41 authorizes the issuance of search warrants for "property" that constitutes evidence of a crime. The term "property" is used in the rule to "include documents, books, papers and any other tangible objects." Fed.R.Crim.P. 41(h). We do not construe the definition to be all inclusive. Common sense dictates that, as technology makes possible the seizure of intangibles, the courts should not limit the scope of Rule 41, but rather we should interpret the rule so as to effectuate its purpose. In *Katz v. United States,* 389 U.S. 347, 355–56, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and in *Osborn v. United States,* 385 U.S. 323, 329–30, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), the Supreme Court held that valid federal warrants could be issued to search for and seize intangible objects, that is, oral communications. We conclude that the impulses recorded by the telephone equipment in the present case fall within the scope of Rule 41 and *Katz* and *Osborn.*

## II.

Michigan Bell contends that the district court does not have the power to compel a telephone company against its will to participate in a Government investigation by tracing telephone calls and, if there is such a power, it should not have been exercised in the present case.

■ We hold that the district court properly ordered the telephone company to provide the FBI with all necessary assistance in manual tracing operations. Without this assistance by the telephone company, the entire criminal investigation in the present case—grounded on probable cause—would be nullified. In this situation we conclude that the district court had authority under the All Writs Act, 28 U.S.C. § 1651(a) to require the telephone company to provide the necessary assistance for the tracing of calls, including the performance of manual tracing operations. *United States v. Southwestern Bell Telephone Co., supra,* 546 F.2d at 246; *United States v. Illinois Bell Telephone Co., supra,* 531 F.2d at 814; and *Application of the United States in the Matter of an Order Authorizing the Use of a Pen Register or Similar Mechanical Device, supra,* 538 F.2d at 963, 966 (Mansfield, J., dissenting).

It is to be emphasized that a telephone company is no ordinary third party. It is a public utility, enjoying a monopoly in an essential area of communications. It owns and controls the telephone facilities involved in the present case. The district court found that there was probable cause to believe that these facilities were being used for criminal purposes. The telephone company is the only entity that can effectuate the orders of the district court to prevent company-owned facilities from being used in violation of both state and federal laws. The company was not required to provide this law enforcement assistance at its own expense. The orders of the district court expressly provide that the telephone company is to be reimbursed for all reasonable expenses incurred in complying therewith.

At common law a sheriff could require an unwilling citizen to assist him in executing king's writs, effecting an arrest, quelling riots and apprehending robbers. A posse comitatus could be assembled in emergency situations. *See* 70 Am.Jur.2d, *Sheriffs, Police and Constables,* § 30. It is obvious that the power of the district court in the present case—directed against a public utility to prevent the unlawful use of its own facilities at no hazard or cost to the utility—is far less burdensome than the exercise of the foregoing powers of the sheriff at common law.

We conclude: (1) that the district court had authority, upon a showing of probable cause, to require the telephone company to

install card drops and other mechanical or electrical devices designed to trap and trace incoming telephone calls; and (2) that the district court had authority to direct the telephone company to provide the FBI with the facilities and technical assistance, including the performing of manual tracing operations, necessary for the implementation of the orders of the court, and that this authority was properly exercised in the present case.

Affirmed. No costs are taxed. Each party will bear its own costs on this appeal.

CELEBREZZE, Circuit Judge, dissenting.

I am able to agree with the majority on neither the threshold issue of mootness nor the merits of this case. I respectfully dissent.

The majority concedes that this case is moot, yet proposes to consider this appeal as coming within the "capable of repetition yet evading review" exception to the mootness doctrine. While the facts of this case are capable of repetition, they will not necessarily keep evading review. A stay by the district court or a Judge of this Court, as well as a contempt citation, could preserve an actual controversy for review in a future case. Thus this case does not come within the exception to the mootness doctrine claimed by the majority. *Southern Bell Telephone and Telegraph Co. v. United States,* 541 F.2d 1151 (5th Cir. 1976).

Since the majority reaches the merits, I feel compelled to register my views on the substantive issues presented herein. I believe the majority paints with too broad a brush in fashioning the powers of the district court. Compelling Michigan Bell to participate actively in a government investigation is a serious matter. I do not believe that such an intrusion upon a private entity can be justified by such questionable authority as the All Writs Act or by analogizing to the powers of a sheriff at the common law. *Application of United States,* 538 F.2d 956 (2d Cir. 1976), *cert. granted* 429 U.S. 1072, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977); *Application of United States,* 546 F.2d 243, 247–50 (8th Cir. 1976) (Lay, J.,

dissenting), *cert. petition pending* 45 U.S. L.W. 3638 (1977). The government should address its pleas to the Congress, not the courts.