**Application of the UNITED STATES of America FOR AN ORDER AUTHORIZING the INSTALLATION OF a PEN REGISTER or a TOUCH–TONE DECODER and a TERMINATING TRAP.**

**Misc. No. 7178.**

United States District Court,
W. D. Pennsylvania.

Oct. 19, 1978.

---

Richard B. Tucker, Pittsburgh, Pa., for plaintiff.

J. Alan Johnson, Asst. U.S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

The instant matter involves the motion of Bell Telephone Company of Pennsylvania, pursuant to Rule 47 of the Federal Rules of Criminal Procedure, to modify the order of this court dated September 5, 1978. The order authorized the installation of a pen register, i. e., touch tone decoder, and a terminating trap to a subject telephone within the jurisdiction of this court.

A pen register is a mechanical device attached to a telephone line which records on paper tape, or by digital readout, all numbers dialed from that line. The device does not monitor the call, nor does it indicate whether the outgoing call was completed. A terminating trap, on the other hand, records the number of the telephone from which an incoming call is made to the subject telephone.[1] Both devices are installed and monitored at the office of the public utility and therefore require no encroachment upon private property.[2]

Bell Telephone also implores this court to vacate its amended order of September 8, 1978, directing the company to "install card drops and other mechanical or electrical devices" to the subject telephone for a ten-day period commencing on September 5, 1978. The data from all devices was ordered to be then delivered to special agents of the Federal Bureau of Investigation.

After consideration of the briefs of the parties, and the evidence presented at the hearing, we conclude that the motion of

---

1. For a technical discussion of the tracing or trapping process, *see State v. Hibbs*, 123 N.J. Super. 152, 301 A.2d 789 (1972).

2. *Cf. United States v. Dalia*, 575 F.2d 1344 (3d Cir. 1978).

Bell Telephone to modify or vacate the orders of September 5 and 8, 1978, must be denied.

## II. *Discussion*

Bell Telephone's protestations are directed to those portions of the orders which require the company to trap and trace the telephone numbers of the incoming calls to the subject telephone. The company concedes that the Supreme Court has authorized the district courts, where appropriate, to order a public utility to install a pen register. *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). Therefore, no objection is adduced to that portion of the order which requires installation of a pen register.

Two issues are raised by the motion of Bell: (1) Does the district court have the authority under Rule 41, upon a showing of probable cause, to order Bell to install mechanical devices and perform manual tracing operations designed to trap and trace incoming telephone calls to a monitored telephone?; and (2) Does the district court have the authority under the All Writs Act, 28 U.S.C. § 1651(a), to compel Bell to provide the facilities and technical assistance to implement the order at the expense of the Government?

### (A). *Authority to Issue Order Under Rule 41*

In *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977), the Supreme Court held that the authority of a district court to order installation of a pen register is governed by Rule 41 of the Federal Rules of Criminal Procedure and not by Title III of the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C. § 2510 et seq., *Id.* at 166 and 168, 98 S.Ct. 364. The Court's reasoning with regard to pen registers is apposite to the devices designed to trap and trace the telephone numbers of the telephones from which the calls were made in the instant case.

■ Title III is concerned with orders "authorizing or approving the interception of a wire or oral communication . . . ." 18 U.S.C. § 2518(1). Congress defined "intercept" to mean "the *aural* acquisition of the *contents* of any wire or oral communication . . . ." *Id.* at § 2510(4) (emphasis added). Since pen registers do not intercept the "contents" of communications, they are not controlled by Title III. *United States v. New York Telephone, supra* at 167, 98 S.Ct. 364. Inasmuch as the tracing of phone numbers similarly does not involve an "aural acquisition," in our judgment, traces, like pen registers, are without the ambit of Title III.

Our conclusion is buttressed by the legislative history of Title III. A review of that history indicates Congress did not intend to subject traces to the rigorous procedures outlined in Title III. "The proposed legislation is not designed to prevent the tracing of phone calls. . . . The proposed legislation is intended to protect the privacy of the communication itself and not the means of communication." S.Rep. No. 1097, 90th Cong., 2d Sess. 90 (1968), U.S.Code Cong. & Admin.News 1968, pp. 2112, 2178. We hold that the power of a district court to order the installation of a terminating trap is controlled by Rule 41 of the Federal Rules of Criminal Procedure.

Federal Rule 41 authorizes the issuance of search warrants for "property" which constitutes evidence of crime. The term "property" includes "documents, books, papers, and other tangible objects." Fed.R. Crim.P. 41(h). However, this definition is not all inclusive. In *New York Telephone,* the Court explicated that Rule 41 is sufficiently broad to encompass seizure of intangible items such as dial impulses. 434 U.S. at 170, 98 S.Ct. 364. Since the traps or tracing devices in the instant case also involve the seizure of impulses recorded by telephone equipment, we conclude that the orders of September 5 and 8, 1978, are within the scope of Rule 41 and *New York Telephone.*

The Court of Appeals for the Sixth Circuit was also confronted with the question of a district court's authority to order

tracers as opposed to pen registers. In *Michigan Bell Tel. Co. v. United States,* 565 F.2d 385 (6th Cir. 1977), the court reviewed an order of a district court which mirrors the language of this court's order of September 8, 1978. The court held:

> (T)he district court had authority, upon a showing of probable cause, to require the telephone company to install card drops and other mechanical or electrical devices designed to trap and trace incoming telephone calls. *Id.* at 389–390.

■ Bell Telephone urges this court to reject the holding in *Michigan Bell* because, in its view, the court failed to address the marked differences between pen registers and tracing devices. Bell contends that, unlike pen registers, the installation of mechanical devices and performance of manual tracing operations requires an unwilling private citizen to conduct a search on behalf of law enforcement officials. Such an order allegedly violates Rule 41 and 18 U.S.C. § 3105 because only law enforcement officials are empowered to conduct searches.[3] We disagree.

Bell has not been ordered to investigate or search. Bell has been directed to utilize technology under its exclusive control for the compilation of data relative to the use of its facilities. Due to the complex nature of the equipment involved, only telephone company personnel can perform the tracing operations. In our judgment, Bell Telephone is assisting law enforcement officials but it is not conducting the search.

(B). *Authority to Compel Bell to Install Mechanical Devices and Perform Manual Tracing Operations Under the All Writs Act*

A separate and distinct issue from this court's power or authority to promulgate the instant orders pursuant to Rule 41, concerns the propriety of commanding an unwilling private party to install mechanical devices and perform manual tracing opera-

tions in order to implement the judicial process. The Government claims that such authority obtains from the All Writs Act. 28 U.S.C. § 1651(a). The Act provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

■ The All Writs Act does not, by itself, convey jurisdiction upon a district court. It empowers only writs in aid of jurisdiction otherwise obtained. *Morrow v. District of Columbia,* 135 U.S.App.D.C. 160, 417 F.2d 728 (1969). Since we conclude that jurisdiction is extant under Rule 41, the requirements of the Act have been satisfied.

The Act also mandates that any writ be "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). In *New York Telephone,* the Supreme Court held that the All Writs Act authorized the district court to compel the utility to provide whatever assistance was necessary to install pen registers. The Court stated:

> This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained. 434 U.S. at 172, 98 S.Ct. at 372.

The Court noted that the Act extends to persons, "who though not parties to the original action or engaged in wrong doing, are in a position to frustrate the implementation of a court order . . . ." *Id.* at 174, 98 S.Ct. at 373. Finally, the Court rejected the utility's assertion that it was extraordinary to expect citizens to directly involve themselves in the law enforcement process. In this regard, the Court observed:

> The conviction that private citizens have a duty to provide assistance to law enforcement officials when it is required is

---

**3.** 18 U.S.C. § 3105 provides: "A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution."

by no means foreign to our traditions, as the Company apparently believes. *Id.* at 176, n. 24, 98 S.Ct. at 374.

In support of this proposition, the Court cited *Babington v. Yellow Taxi Corp.*, 250 N.Y. 14, 164 N.E. 726 (1928) in which it was held that a citizen had a duty, when asked, to assist a policeman in hot pursuit of a felon, and *Elrod v. Moss*, 278 F. 123, 129 (4th Cir. 1921) in which the court required a citizen, upon request, to assist a law enforcement official in the execution of a search warrant.

The duty of a citizen to assist law enforcement personnel was also discussed by the Court of Appeals in *Michigan Bell Tel. Co. v. United States*, supra. The power of the district court to rely upon the All Writs Act and direct a utility to perform tracing operations was sustained as follows:

> At common law a sheriff could require an unwilling citizen to assist him in executing king's writs, effecting an arrest, quelling riots and apprehending robbers. A posse comitatus could be assembled in emergency situations. See 70 Am.Jur.2d Sheriffs, Police and Constables, § 30. It is obvious that the power of the district court in the present case—directed against a public utility to prevent the unlawful use of its own facilities at no hazard or cost to the utility—is far less burdensome than the exercise of the foregoing powers of the sheriff at common law. 565 F.2d at 389.

■ Finally, as emphasized in *New York Telephone* and *Michigan Bell*, a telephone company is no ordinary citizen. It is a public utility which enjoys a monopoly over essential areas of communications. Bell is the only entity that can effectively implement the orders of this court which are designed to prevent the use of Bell's facilities for criminal conduct. Accordingly, we hold that this court has authority under the

All Writs Act to command Bell Telephone Company to implement the instant orders and install traps and traces to memorialize incoming call numbers to a subject telephone.

■ The existence of such power, of course, does not mandate its use. "(T)he power of federal courts to impose duties upon third parties is not without limits; unreasonable burdens may not be imposed." *United States v. New York Telephone Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977). We turn therefore to the question of whether the orders of this court are so burdensome that assistance is contraindicated.

At the hearing of September 15, 1978, Bell called John Mayberry as a witness. Mayberry is an expert who is intimately familiar with the company's switching offices in the metropolitan Pittsburgh area.[4] He explained that there are 152 switching offices in this area.[5] Of these, 22 are serviced by electronic switching equipment (ESS).[6] The ESS system is equipment which Bell has been installing at its switching offices for seven or eight years.[7] At this time, 43 percent of the telephone facilities in the Pittsburgh metropolitan area are serviced by ESS offices.[8] The remainder of the metropolitan area is serviced by various other kinds of equipment termed electromechanical.[9] Bell plans to complete the switchover to ESS by 1990.[10]

As Mr. Mayberry's testimony clearly revealed, the burden to Bell in the operation of tracing an incoming phone call to a target telephone is dependent on the type of switching equipment which is involved. If a call originates in an ESS switching office to a phone number in an area also serviced by an ESS switching office, the call can be automatically traced with little or no diffi-

**4.** Tr. at 12.

**5.** Tr. at 15.

**6.** Tr. at 19 and Bell Exhibit # 1.

**7.** Tr. at 17.

**8.** Tr. at 50.

**9.** Tr. at 19.

**10.** Tr. at 51.

culty.[11]  No Bell personnel are required to effectuate the trace.[12]  If, on the other hand, the call comes to or from an electro-mechanical switching office, the tracing of that call requires the assistance of trained switching technicians in every electro-mechanical switching office.[13]

In the instant case, the burden on Bell is minimal since the target phone is located in McKees Rocks, Pennsylvania.  That office utilizes ESS switching equipment.  Moreover, the government did not request traces on calls originating from switching offices utilizing electro-mechanical equipment.[14]  In fact, Mayberry testified that the tracing of calls in this case did not constitute a burden to the company.[15]  Accordingly, since the record indicates that the burden on Bell to effectuate the orders of September 5 and 8, 1978, is slight, we will deny the motion to modify and vacate.

We wish to emphasize that our holding, today, is limited to the circumstances of this case.  The testimony adduced at the hearing clearly established that where, as here, the trace involves calls from one ESS office to another, little or no burden is placed on the utility to comply.  If future applications by the government require manual tracing by phone company personnel, we will carefully assess whether the burden to the company dictates against the exercise of our authority under the All Writs Act.[16]

11.  Tr. at 20, 40.

12.  Tr. at 40.

13.  Tr. at 41, 42.

14.  Tr. at 40, 47.

15.  Tr. at 46, 47, and 56.

16.  We note that this matter was presented to the court in an unusual manner.  Both orders were set to expire on September 15, 1978.  Bell Telephone did not move to modify or vacate

either order until September 13, 1978.  This is unfortunate inasmuch as a hearing prior to the issuance of these orders may have revealed that the Government's requests which, as stated, sought manual tracing, were *potentially* burdensome to the company and therefore should have been narrowed from the outset to encompass only calls from ESS switching offices.  On the state of the record before us, however, it is evident that Bell's burden is minimal and, therefore, it would be inappropriate to vacate those orders.