DISTRICT ATTORNEY FOR THE PLYMOUTH DISTRICT vs.
NEW ENGLAND TELEPHONE & TELEGRAPH COMPANY.

Plymouth.  October 2, 1979. — January 24, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Eavesdropping.  Search and Seizure.  Constitutional Law,* Search and
seizure.  *Electronic Surveillance.  Telephone Company.*

Upon appeal from an order requiring a telephone company to assist a dis-
trict attorney in the installation of a cross frame unit trap on a par-
ticular telephone line in order to record the telephone numbers of in-
coming calls to the telephone line under surveillance, this court de-
clined to pass on the possible rights of third persons who dial the
number of the line to object on State constitutional grounds where
statutory procedures were followed in obtaining the right to survey the
subject telephone line.  [588-590]  HENNESSEY, C.J., concurring.
LIACOS, J., dissenting.

The provisions of G. L. c. 272, § 99, authorize a court to order a tele-
phone company to assist in the installation of a cross frame unit trap on
a particular telephone line in order to record the telephone numbers of
incoming calls to the telephone line under surveillance.  [590-593]
HENNESSEY, C.J., concurring.

In the circumstances, a judge of the Superior Court properly exercised his
discretion in ordering a telephone company to assist a district attorney
in the installation of a cross frame unit trap to record the telephone
numbers of incoming calls to a telephone line subject to surveillance
pursuant to G. L. c. 272, § 99.  [593-594]  HENNESSEY, C.J., concur-
ring.  LIACOS, J., dissenting.

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 27, 1979.

The case was heard by *Young,* J., and was reported by
him to the Appeals Court.  The Supreme Judicial Court
granted a request for direct review.

*John P. Corbett,* Assistant District Attorney, for the
plaintiff.

*Harry A. Davenport* (*Casimir S. Lopata* with him) for the defendant.

*John Reinstein, Judith H. Mizner & David Carson,* for the Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

WILKINS, J.  On March 2, 1979, the district attorney for the Plymouth District (district attorney) obtained an order from a judge of the Superior Court, pursuant to a motion to compel technical assistance, directing the New England Telephone & Telegraph Company (company) to assist the district attorney in the installation of a cross frame unit trap or similar device on a particular telephone line.  A cross frame unit trap records the telephone numbers of incoming calls, or attempted incoming calls, to a telephone line under surveillance.  The company argues that the judge had no authority to enter the order.  We conclude that the judge had that authority and, in the circumstances, acted within his discretion.

We summarize the background as set forth in the judge's memorandum of decision and report.[1]  In early 1979, the district attorney was engaged in an extensive criminal investigation into illegal gaming operations in Plymouth County.  On February 16, 1979, a judge of the Superior Court issued a warrant and order, pursuant to G. L. c. 272, § 99E, authorizing the interception of wire communications to and from the telephone number which was subject to the warrant.  That order also explicitly authorized "the installation of a pen register or other device, if practicable, designated for the purpose of ascertaining the telephone

---

[1] The judge reported the case to the Appeals Court for a determination of the propriety of the order.  We granted the company's request for direct review.  Although the period of the effectiveness of the order has expired, and the company has complied with the order, and, therefore, the case is technically moot, it is appropriate to pass on the question before us because, in the normal course, any such order will be incapable of timely review and yet the issue is likely of repetition.  See *Superintendent of Worcester State Hosp.* v. *Hagberg,* 374 Mass. 271, 274 (1978); *United States* v. *New York Tel. Co.,* 434 U.S. 159, 165 n.6 (1977).

numbers called by the subjects . . . and the telephone numbers of instruments used in making calls to the suspect telephone in furtherance of the conspiracy." While the wiretap warrant was in the process of being executed, the district attorney sought and obtained the order compelling the company to provide technical assistance in installing a cross frame unit trap in the company's Brockton switching station. This installation would result in the recording of the numbers of certain incoming local calls.[2]

1. *Constitutional considerations.* The company advances no constitutional arguments.[3] It does not contend that the State lacks constitutional authority to require compensated assistance from it, but only that the judge had no statutory authority to do so. The Supreme Court of the United States has upheld a Federal court order directing a telephone company to provide Federal law enforcement officials assistance in implementing an order authorizing the use of a pen register. *United States* v. *New York Tel. Co.,* 434 U.S. 159 (1977). Neither the opinion of the Court nor the dissenting opinions indicate that, assuming appropriate authority for a court to enter such an order, there is any significant Federal constitutional problem. The principal dissenting opinion refers to art. 14 of the Massachusetts Declaration of Rights, concerning unreasonable searches, and suggests, in light of historical abhorrence to "general warrants" and "writs of assistance," that courts should be reluctant to imply authority for court orders commanding

---

[2] The equipment at the Brockton switching station was more sophisticated than that at certain other company switching stations, and the tracing process, therefore, was far easier than it would have been in many other situations. Only about one half the inhabitants of greater Brockton were served by the Brockton switching station in which the cross frame unit trap was to be located. Only the numbers of incoming calls dialed within the switching station's service area would be recorded.

[3] The company opposed the district attorney's request for assistance, and it makes no claim that it was not afforded an adequate hearing on the issue of the burdensomeness of the order before the order was entered. See *In re Application of the U.S. for an Order Authorizing the Installation of a Pen Register or Touch-Tone Decoder & a Terminating Trap,* 610 F.2d 1148, 1157 (3d Cir. 1979).

third-party assistance to law enforcement officials. *United States* v. *New York Tel. Co.*, *supra* at 180 and at 190 (Mr. Justice Stevens dissenting in part).

The company does not, and arguably cannot, present constitutional objections which might be advanced by others, most particularly the argument that the recording of the source of an incoming call is an unreasonable search in violation of the constitutional rights of a person who dials the subject telephone number. It must be granted that, in many instances, the caller will never learn of the intrusion and that, unless considered in a preinstallation proceeding such as this, his or her constitutional rights might be infringed without any opportunity for judicial protection. The Supreme Court of the United States has recently held, however, that the use of a pen register in a telephone company office (to record numbers dialed from a particular line) is not a search within the meaning of the Fourth Amendment. *Smith* v. *Maryland*, 442 U.S. 735 (1979). We earlier had suggested, in a contrary tone, that the use of a pen register required compliance with the probable cause requirements of the Fourth Amendment (see *Commonwealth* v. *Vitello*, 367 Mass. 224, 279 n.33 [1975]). Presumably, the Supreme Court would not regard the installation of a cross frame unit trap at a telephone company office as a search in the constitutional sense. See *Smith* v. *Maryland*, *supra* at 741-746.

We, of course, might adopt a broader definition of search under art. 14 of the Declaration of Rights than prevails under the Constitution of the United States. See *Commonwealth* v. *Ortiz*, 376 Mass. 349, 358 (1978). The amicus brief filed by the Civil Liberties Union of Massachusetts urges us to do so and to strike down the order on State constitutional grounds.

The record in this case, however, provides no adequate basis for reaching any conclusion about the constitutional rights of persons who dial the number of the surveyed telephone line. We do not have before us the information on which probable cause to survey the telephone line was

based. We know that a judge of the Superior Court thought it sufficient to conclude that a wiretap was justified in the circumstances, and he issued an order and warrant to that effect. Thus, actual conversations on the telephone line were monitored and perhaps recorded. This process included incoming, as well as outgoing, calls. The monitoring and recording of such calls constitute, at least in most instances, a greater intrusion into a caller's privacy than does the use of a cross frame unit trap (*United States* v. *New York Tel. Co.*, 434 U.S. 159, 170 [1977]), and the installation of a wiretap according to statutory procedures has withstood constitutional challenge. See *Commonwealth* v. *Vitello*, 367 Mass. 224, 244 n.5 (1975). Compliance with statutory requirements itself affords considerable protection against any unconstitutional intrusion. Consequently, we decline in this case, where statutory procedures were followed in obtaining the right to survey the subject telephone line, to pass on the possible rights of third persons to object on State constitutional grounds.[4]

2. *Statutory authority.* The company contends that a judge of the Superior Court lacks authority to issue an order

---

[4] The issues presented by the parties do not concern the lawfulness of the original wiretap order. The dissenting opinion argues that this court should decline to answer the questions presented until it is clear that that wiretap order was lawful. The case is technically moot. A remand for further findings of fact would be a waste of judicial resources.

We reject the dissent's suggestion that the court's opinion will encourage dragnet surveillance of telephone subscribers without probable cause. In view of the statutory requirements for telephone surveillances, we perceive neither the threat of a dragnet nor the want of findings of probable cause which the dissent imagines. These statutory requirements are not inconsiderable. The dissent implies that these statutory requirements may not comport with the requirements of the State Constitution, raising doubt about the constitutionality of all wiretaps. This case simply does not present this issue. The case involves only the question of the State's right to direct the tracing of telephone numbers of incoming calls which were already being monitored pursuant to an unchallenged court order. Thus, apart from the order against the company, every word spoken in every conversation involving the surveyed telephone was subject to being heard, and recorded, by investigating authorities. The identity of the callers might be ascertained and information far more personal than a telephone number might be noted.

379 Mass. 586                                                591

District Attorney for Plymouth District *v.* New England Tel. & Tel. Co.

directing it to assist in the installation of a cross frame unit trap. Some of the company's arguments seek our reconsideration of conclusions reached in *New England Tel. & Tel. Co.* v. *District Attorney for the Norfolk Dist.*, 374 Mass. 569, 573-574 (1978). There, we held that a judge of the Superior Court had authority to order the company to provide technical assistance to law enforcement officers to make an unobtrusive wiretap pursuant to a warrant issued under G. L. c. 272, § 99. We followed in substance the reasoning of the Supreme Court of the United States in *United States* v. *New York Tel. Co.*, 434 U.S. 159 (1977). We adhere to our earlier decision and discuss only those arguments which seek to distinguish the case before us from that earlier one.

The company argues that an order concerning the installation of a cross frame unit trap is not authorized by G. L. c. 272, § 99, and asserts that § 99 occupies the field of statutory authority in Massachusetts. The wiretap order in *New England Tel. & Tel. Co.* v. *District Attorney for the Norfolk Dist.* was clearly authorized by § 99. We have already held that a separate order under § 99 authorizing the use of a pen register by law enforcement officials is not required where a valid order authorizing a simultaneous wiretap interception has been issued pursuant to applicable Federal and State statutes. *Commonwealth* v. *Vitello,* 367 Mass. 224, 279 (1975). There is no compelling reason to treat a cross frame unit trap any differently in this respect from a pen register.

We agree with the judge below that § 99 expressly authorizes a court order concerning the installation of a cross frame unit trap. The exceptions to the prohibitions of § 99 include "any person duly authorized to make specified interceptions by a warrant issued pursuant to this section." G. L. c. 272, § 99 D 1 d, as appearing in St. 1968, c. 738, § 1. An interception is defined, with certain irrelevant exceptions, to include the secret recording of "the *contents* of any *wire* or oral communication through the use of any intercepting device" (emphasis supplied). G. L. c. 272, § 99 B 4. "Con-

tents" in turn is defined broadly to include, among other things, "any information concerning the identity of the parties to such communication or the existence . . . of that communication." G. L. c. 272, § 99 B 5. It is true that the information recorded by a cross frame unit trap (or a pen register) does not always establish that there was an oral communication, because the dialed call may not have been completed. However, the recording of the telephone number of the line from which a call was attempted is "information concerning the identity of" a party to a communication and concerning "the existence . . . of that communication." Even if the call is not completed, the caller has initiated a wire communication to the surveyed telephone line which is intended to cause that telephone to ring and the existence of that communication is recorded by an intercepting device.

Our conclusion that a cross frame unit trap is regulated by the Massachusetts wiretap statute is based on differences between our statute and the Federal wiretap statute. The Federal wiretap statute defines "intercept" as relating only to the "*aural* acquisition of the contents of any wire or oral communication" (emphasis supplied) (18 U.S.C. 2510[4] [1976]) and is thus inapplicable to pen registers and to cross frame unit traps. See *United States* v. *New York Tel. Co.*, 434 U.S. 159, 166 (1977) (pen register); *Michigan Bell Tel. Co.* v. *United States*, 565 F.2d 385, 388 (6th Cir. 1977) (trapping or tracing incoming calls).[5] Our statute, as quoted above, contains no such limited definition of "inter-

---

[5] The New Jersey Wiretapping and Electronic Surveillance Control Act, N.J. Stat. Ann. § 2A:156A-1 et seq. (West 1971), similarly defines "intercept" as involving the "aural acquisition" of the contents of any wire or oral communication. In light of that restriction, in *In re In-Progress Trace of a Wire Communication*, 76 N.J. 255 (1978), the majority opinion held that no court in New Jersey had authority to require a telephone company to conduct an in-progress trace of a call coming into a telephone which was being subjected to a court authorized wiretap. An amendment to the New Jersey statute, enacted shortly after that decision, places an obligation on a telephone company in certain circumstances to provide an in-progress trace during an interception. N.J.P.L. (1978) c. 51, § 5, amending N.J. Stat. Ann. § 2A:156A-12 (West 1971).

379 Mass. 586                                    593

District Attorney for Plymouth District v. New England Tel. & Tel. Co.

ception." We view the distinction as meaningful and are strengthened in our decision to treat cross frame unit traps as governed by § 99 because to do so will ensure that the procedural protections of § 99 will be available to the users of telephones in this Commonwealth and that the company will be subject to judicial orders only in cases where the conditions of § 99 have been satisfied.[6]

The basic issue here is not so much the question whether a judge of the Superior Court may by order permit the installation of a cross frame unit trap as it is whether, under the statutory law of the Commonwealth, the company may be directed to assist in that effort, assuming proper compensation for its services. Our decision in *New England Tel. & Tel. Co.* v. *District Attorney for the Norfolk Dist.*, 374 Mass. 569 (1978), and our previous discussion of § 99 as applied to this case direct an affirmative answer to that question.[7]

Although a judge of the Superior Court may require the company to assist in the implementation of an order entered pursuant to § 99 by installing a cross frame unit trap, the

---

[6] We have noted that a State wiretap statute properly may adopt standards that are more restrictive than the requirements of Federal law (*Commonwealth* v. *Vitello*, 367 Mass. 224, 247 [1975]) and that in certain respects our statute imposes more stringent restrictions on the use of electronic surveillance devices than exist in certain other jurisdictions (*Commonwealth* v. *Jackson*, 370 Mass. 502, 506 [1976]).

[7] Under the Federal law, courts have found authority in Fed. R. Crim. P. 41 and in the All Writs Act, 28 U.S.C. § 1651(a) (1976), or in analogous "inherent powers" of the Federal courts, to support an order directing a telephone company to assist in the installation of electronic surveillance devices not covered by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 (1976). See *United States* v. *New York Tel. Co.*, 434 U.S. 159, 171-178 (1977) (pen register); *Michigan Bell Tel. Co.* v. *United States*, 565 F.2d 385, 389 (6th Cir. 1977) (tracing device); *Application of U.S.* v. *Southwestern Bell Tel. Co.*, 546 F.2d 243, 246-247 (8th Cir. 1976) (pen register); *United States* v. *Illinois Bell Tel. Co.*, 531 F.2d 809, 814 (7th Cir. 1976) (pen register); *Application of U.S.*, 458 F. Supp. 1174, 1176 (W.D. Pa. 1978) (tracing device). We need not consider whether the order in this case could be supported by parallel reasoning under G. L. c. 276, § 1, and G. L. c. 220, § 2, because we conclude that § 99 supports the entry of an order concerning the cross frame unit trap in this case.

decision whether to enter such an order lies in the judge's sound discretion. The judge should consider the nature of the crime, whether the attempt is likely to be worthwhile (which may depend on the sophistication of the available equipment), the burden on the company, the cost to the Commonwealth, and the threat to the privacy of innocent third parties. In considering the threat to the interests of innocent third parties, the judge should consider whether the Commonwealth has demonstrated a substantial likelihood that it needs to obtain the numbers of one or more telephones from which incoming calls are made. The company argues that it does not want to act as an agent for prosecutors and that its personnel may become subject to improper pressures from criminal elements to disclose surveillance activities which, when a cross frame unit trap is involved, cannot readily be concealed within the company. These considerations are relevant and might be persuasive in obtaining legislative protection for the company. But it is also true that the company has a special monopoly status, and, in many instances, it alone has the equipment and skills necessary to carry out an operation which a judge has determined is reasonably required. In this case, particularly where the task was not onerous, the determination to order the company to assist law enforcement officials was within the judge's discretion.

3. *Conclusion.* The order of the Superior Court judge directing the company to provide such technical assistance as may be necessary for the installation of a cross frame unit trap or similar device is affirmed.

*So ordered.*

HENNESSEY, C.J. (concurring). I concur in both the result and the reasoning of the court. I think it useful to add a few separate comments directed toward the dissenting opinion. The dissent raises issues which simply are not before the court. The court was asked to decide merely the issue

379 Mass. 586                                            595

District Attorney for Plymouth District *v.* New England Tel. & Tel. Co.

whether a judge of the Superior Court had authority to issue an order compelling the telephone company to assist the district attorney by installing a device which identified and recorded the numbers of telephones used to make incoming calls. The telephone company did not raise, indeed may have had no standing to raise, the issue whether the constitutional rights of any of its subscribers had been violated. Nevertheless, the dissent seems to sound Fourth Amendment alarms with regard to two classes: first, the users of the primary telephone, and, second, the users of telephones making calls to the primary telephone. I agree with the court that these issues are not presented by this appeal, but since they have been raised by the dissent, I address them briefly.

The dissent's concern for the primary telephone user clearly jousts with windmills. Everything we have said relevant to this issue indicates that installation of a number recording device may be made only by compliance with the State wiretap statute, G. L. c. 272, § 99, which parallels the Federal statute and supports Fourth Amendment and similar State considerations. See *New England Tel. & Tel. Co.* v. *District Attorney for the Norfolk Dist.*, 374 Mass. 569, 573 (1978). See also *Commonwealth* v. *Vitello*, 367 Mass. 224, 279 n.33 (1975) (pen register may be installed only upon showing of probable cause with regard to primary telephone).[1]

The dissent's second premise, that probable cause must be shown as to a particular telephone or telephones which generate calls to the primary telephone, raises considerations which I thought had been laid to rest both by a long series of Federal and State cases (see, e.g., cases collected in *Commonwealth* v. *Vitello, supra* at 244-245 n.5; cf. *Smith* v. *Maryland*, 442 U.S. 735, 741-746 [1979]), and by the comprehensive Federal and State wiretap statutes. See Ti-

---

[1] Although, as the opinion of the court indicates, the Supreme Court does not consider use of pen registers a search within the meaning of the Fourth Amendment, *Smith* v. *Maryland*, 442 U.S. 735 (1979), we are free to adopt a broader definition of search under art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Vitello*, 367 Mass. 224, 247 (1975).

tle III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 (1976); G. L. c. 272, § 99. The dissent seems to argue broadly against permitting any interceptions or number recordings if any call to the primary telephone might emanate from a telephone as to which probable cause had not been established as a basis for the warrant. While that proposition may be a valid one for reexamination in an appropriate case, I would not give it serious consideration. Such a restriction would for practical reasons eliminate virtually all wiretaps, despite their compliance with the existing legal safeguards.

LIACOS, J. (dissenting). This case comes before us on a record inadequate to warrant the position taken by the majority opinion. The effective result of the majority opinion will be, I fear, to encourage dragnet surveillance of telephone subscribers, innocent as well as law breakers, without probable cause. This decision will serve as justification for secret surveillance of anyone who happens, by intention or inadvertence, to communicate over the suspect telephone. Such secret surveillance will also reach those who dial the suspect telephone without regard to whether a call is completed. Whether such surveillance is deemed to be a "search" in constitutional terms, Federal or State, the interests affected are significant, but, as the majority admit, the adversaries here do not purport to represent them. Only an amicus brief by the Civil Liberties Union purports, in part, to assert the interests of the persons whose telephone numbers may be recorded.

Additionally, as the majority also admit, the "record in this case . . . provides no adequate basis for reaching any conclusion about the constitutional rights of persons who dial the number of the surveyed telephone line." *Supra* at 589. I agree, but point out that this record also is inadequate to determine whether the statutory procedures and safeguards of G. L. c. 272, § 99, were met. A more appropriate approach to this case would be to require the parties to supplement the record or to remand the matter for further findings of fact by the judge.

So far as the Federal case law is concerned, I have no disagreement with the constitutional analysis of the majority opinion. I would, however, have gone further to indicate my disagreement with the Federal approach and to explore the protections bestowed by art. 14 of our Declaration of Rights, as the amicus brief urges and the majority admit to be possible.[1]

I do not disagree with the majority that the use of pen registers and cross frame unit traps is governed by G. L. c. 272, § 99. However, I would not reach the question whether the Superior Court had authority in this case to order assistance by the telephone company to install the cross frame unit trap. My reasons are as follows.

---

[1] The United States Supreme Court has said: "[A] State is free *as a matter of its own law* to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards." *Oregon* v. *Hass,* 420 U.S. 714, 719 (1975) (emphasis in original). We have taken such a view in other cases. See *Commonwealth* v. *Soares,* 377 Mass. 461, 475-477 (1979); *Commonwealth* v. *Ortiz,* 376 Mass. 349, 358 (1978). Other State courts have also relied on State law to afford greater protection to individuals than is required by Federal constitutional decisions. See *People* v. *Longwill,* 14 Cal. 3d 943 (1975); *People* v. *Brisendine,* 13 Cal. 3d 528 (1975); *State* v. *Kaluna,* 55 Hawaii 361 (1974); *People* v. *Beavers,* 393 Mich. 554 (1975); *State* v. *Johnson,* 68 N.J. 349 (1975); *State* v. *Florance,* 270 Or. 169 (1974); *Commonwealth* v. *McLaughlin,* 475 Pa. 97 (1977); and *State* v. *Opperman,* 89 S.D. 25 (1975). Thus, even though it has been held that the Fourth Amendment does not apply to warrantless use of a pen register, *Smith* v. *Maryland,* 442 U.S. 735 (1979), we can, and indeed we should, hold that art. 14 forbids warrantless use of a pen register or of a cross frame unit trap.

Article 14 protects "the *control* we have over information about ourselves" (emphasis in original). Fried, Privacy, 77 Yale L.J. 475, 482 (1968). Contrary to the "assumption of the risk" argument in *Smith, supra* at 744, this interest is not necessarily extinguished on voluntary communication of private information to another. Apparently impersonal records of a telephone company or bank can be assembled into a "virtual current biography." *Burrows* v. *Superior Court,* 13 Cal. 3d 238, 247 (1974). See *California Bankers Ass'n* v. *Shultz,* 416 U.S. 21, 78-79 (1974) (Powell, J., concurring). Furthermore, the reality of modern life precludes a rational argument that the decision to convey telephone numbers to the telephone company is "voluntary." See *People* v. *McKunes,* 51 Cal. App. 3d 487 (1975) (State Constitution forbids seizure of telephone records without probable cause). Cf. *Burrows* v. *Superior Court, supra; Commonwealth* v. *DeJohn,* 486 Pa. 32 (1979) (bank records).

The original warrant, issued February 16, 1979, is not in the record. Neither does the record contain an application showing that there was probable cause to issue the original warrant. G. L. c. 272, § 99 E 2; § 99 F 1, 2 a. We are thus unable to determine its general validity. We are also unable to know whether the language of the warrant, quoted in the judge's findings,[2] was supported by a showing of probable cause at the outset in regard to the claim that other parties were calling the suspect telephone for criminal purposes. The Commonwealth may have shown probable cause that telephone A was in use for criminal purposes within G. L. c. 272, § 99 F 2 a, b, but that showing, without more, does not support a finding of probable cause that another telephone (telephone B) is being so used. Cf. *Commonwealth* v. *Smith*, 370 Mass. 335, 344-345 (1976) ("any person present" warrant permissible only with probable cause to believe that all persons present are involved in criminal activity); *Ybarra* v. *Illinois*, 444 U.S. 85 (1979) (probable cause to search bar and bartender for heroin does not imply probable cause to search customers). Nothing in this record shows that the original warrant was based on probable cause as to telephone B or any other telephone.

The record reveals that on February 27, 1979, and March 1, 1979, hearings were held in camera. The transcript of those hearings shows that (a) no further application as to probable cause was submitted and (b) no evidence was taken. Indeed, as the judge candidly admits, his finding of probable cause as to telephone B (and C, D, E, etc.) that might be caught up in the trap is based solely on the original finding of probable cause, on February 16, and the representations of counsel. Putting aside the question of staleness arising from a finding on February 16, 1979, in regard to an order issued on March 2, 1979, see, e.g., *Commonwealth* v.

---

[2] "Also authorized is the installation of a pen register or other device, if practicable, designated for the purpose of ascertaining the telephone numbers called by the subjects . . . and the telephone numbers of instruments used in making calls to the suspect telephone in furtherance of the conspiracy."

*Vitello,* 367 Mass. 224, 261 (1975); *Sgro* v. *United States,* 287 U.S. 206 (1932), I find nothing in this record as to what the original surveillance produced. Apart from the district attorney's unverified remarks, the record is barren of anything which would establish that other persons were calling the suspect telephone number for criminal purposes. General Laws c. 272, § 99 J 1, plainly states the requirements for the renewal of a warrant; a new application under oath must be submitted and must set forth the results of interceptions thus far conducted. If the March 2 order is an extension of the first warrant, compliance with § 99 J 1 must be shown. The requirement of a showing of probable cause to warrant the issuance of the order as to the cross frame unit trap was assumed by the trial judge. Yet there was no compliance with the procedural requirements of § 99 J 1.

It is difficult to ascertain whether this order is simply one for technical assistance or, in reality, an extension of the original warrant. The original warrant was issued on February 16, 1979. It was good for thirty days but permitted an interception of no more than fifteen days. G. L. c. 272, § 99 I 2. The date of the commencement of the intercept is not revealed but the district attorney indicated on February 27, 1979, that it was in its ninth day; that would make the fifteenth day fall on March 5, 1979. The judge and the parties seem to have assumed, however, that the cutoff date was March 2. The order for the cross frame unit trap is dated March 5, entered on the docket on March 15, under a date of March 1, and the judge refers to it in his findings as being entered on March 2. It is apparent from the face of the order that the trap was to be installed within thirty-six hours after service on the company (the time of service not being shown) and was to continue for not more than seven days over a period not to exceed twenty-two days. It is impossible to ascertain the dates when surveillance under the original warrant and under this order actually terminated. On a view most favorable to the government, it appears that the surveillance by virtue of the trap would extend beyond the fifteen days originally authorized. Hence, in my view,

a new surveillance device for an extended period of time was ordered without showing of probable cause or compliance with the statute.[3]

In these circumstances, I cannot agree with the conclusion of the majority of the court. I would decline to reach the question reported absent a clear showing that the very statutory requirements the court holds to apply to such devices have been met. Otherwise, the language of the majority opinion that "to treat cross frame unit traps as governed by § 99 . . . will ensure that the procedural protections of § 99 will be available to the users of telephones in this Commonwealth" rings a hollow tone indeed.

---

[3] I need not reach the question whether this order, or the original warrant, meets the requirements of particularity set forth in G. L. c. 272, § 99 I 3. Cf. art. 14 of the Declaration of Rights.