PEOPLE v HAYES

(CITY OF DEARBORN HEIGHTS v HAYES)

1. SEARCHES AND SEIZURES—WIRE COMMUNICATIONS—PEN REGISTERS
   —PROBABLE CAUSE.

   The use of a pen register to gather information about telephone
   conversations involves a search and orders by a state agency to
   use a pen register to gather such information may issue only
   upon a showing of probable cause.

2. SEARCHES AND SEIZURES—WIRE COMMUNICATIONS—PEN REGISTERS
   —POLICE—ORDINANCE VIOLATION—GOVERNMENTAL ACTION—
   FEDERAL COMMUNICATIONS ACT—INADMISSIBLE EVIDENCE.

   The interception of wire communications through the use of a
   pen register by a telephone company under the guidance of a
   police agency attempting to gather evidence for an arrest for
   violation of a city ordinance prohibiting harassing phone calls
   is governmental action and the gathered information is inad-
   missible at a trial for the offense if the information was
   gathered without a search warrant.

3. MUNICIPAL CORPORATIONS—ORDINANCES—PHONE CALLS—HARASS-
   ING OR MOLESTING—CONSTITUTIONAL LAW—VAGUE OR OVER-
   BROAD ORDINANCES.

   A state has a legitimate interest in prohibiting obscene, threaten-
   ing and harassing phone calls and an ordinance prohibiting
   repeated phone calls for the sole purpose of harassing or
   molesting is not constitutionally vague or overbroad.

Appeal from Wayne, Joseph A. Moynihan, Jr., J.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 428–435.
   68 Am Jur 2d, Searches and Seizures §§ 24, 60, 68, 69.
   74 Am Jur 2d, Telecommunications §§ 213, 214.
[2] Admissibility, in criminal prosecution, of evidence secured by
   mechanical or electronic eavesdropping device. 97 ALR2d 1283.
   Admissibility, in criminal case, of evidence obtained by search by
   private individual. 36 ALR3d 553.
[3] 74 Am Jur 2d, Telecommunications § 206.

Submitted October 12, 1977, at Detroit. (Docket No. 30409.) Decided April 3, 1978.

Richard Hayes and Joyce Hayes were convicted in district court of making harassing phone calls in violation of a City of Dearborn Heights ordinance. Defendants appealed to circuit court. Affirmed. Defendants appeal by leave granted. Reversed and remanded to district court for a new trial.

*Poole, Klask & Carty, P. C.* (by *Paul T. Jansen),* for plaintiff.

*Michael S. Surnow,* for defendants.

Before: D. E. HOLBROOK, P. J., and N. J. KAUFMAN and J. E. McDONALD,* JJ.

J. E. McDONALD, J. Defendants appeal from an August 26, 1976, judgment of Wayne County Circuit Court, which affirmed defendants' April 29, 1975, district court jury conviction for making harassing phone calls in violation of a Dearborn Heights ordinance. This Court granted leave to appeal.

Evidence introduced at trial tended to establish the following facts: Sonia Toundaian and her husband, Charles, were the complainants herein. Mrs. Toundaian was a co-chairperson, along with one Mr. Shollenberger, of the Crestwood Civil Action Group whose avowed function was to see that the then striking teachers of the Crestwood School District were fired. Mrs. Toundaian received much publicity, with her name frequently appearing in the media. Between December 4 and Christmas,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1974, Mrs. Toundaian and her husband began receiving many obscene and threatening phone calls. They complained to the phone company and to the police, and consented to a "tap" being placed on their line and indicated their willingness to prosecute the person or persons responsible. The tap, installed during late December or early January, showed that calls were coming from many different locations. During January and February, the complainants continued to receive a great number of alleged harassing phone calls. They kept records of some of these calls and turned them over to the police.

The equipment installed on the Toundaian's line was a number group trap and indicated that a number of calls had been made from the 644 exchange. A pen register was set up on the 644 exchange on February 5th, and it showed that, on that date, six calls were made from 644-8553 to the Toundaian residence. These six calls were recorded between 11:15 and 11:18. This information was given by the phone company to the police, and the police requested further evidence. A pen register was then set up on phone number 644-8553, which phone was registered to defendant Richard Hayes. Richard Hayes' wife, Joyce, was one of the striking Crestwood teachers who had been fired on December 30. This pen register recorded that between February 18 and February 21, twenty-one calls were made from 644-8553 to the complainants' residence. On February 21, a telephone company security employee advised Dearborn Heights Police Detective Bennett of the information he had gathered. The defendants were arrested and charged with making harassing phone calls. Complainants did admit that some harassing calls were received even after defendants had been apprehended.

None of the witnesses testified that they had heard a woman's voice on the phone.

Defendant-appellants claim that the use of a pen register gathered information which was inadmissible as obtained in violation of the Federal Communications Act, 47 USC 605.

Defendants also claim error in the decision by the district court denying a motion for a continuance for four days because counsel of record was involved in a separate trial.

Further, defendants claim the ordinance under which defendants were convicted is so vague and overbroad as to violate their constitutional rights. Further, the defendants claim they were subjected to cruel and unusual punishment by the district court, ordering them to have their telephone removed from their home for a period of one year. And, the final claim of error is that the district court committed reversible error in admitting evidence gathered by the pen register over the defendants' objection, on the ground that the evidence was the product of a warrantless search.

It appears that the Federal courts, relying principally upon the language of Justice Powell's opinion in *United States v Giordano,* 416 US 505; 94 S Ct 1820; 40 L Ed 2d 341 (1974), have indicated that the use of a pen register does involve a search and that orders to use a pen register may issue only upon a showing of probable cause, *Application of the United States of America In the Matter of an Order Authorizing the Use of a Pen Register or Similar Mechanical Device,* 538 F2d 956 (CA 2, 1976). See also *Application of the United States for an Order Authorizing Installation and Use of a Pen Register v Southwestern Bell Telephone Co,* 546 F2d 243 (CA 8, 1976).

"It is also clear that pen register orders are not now

covered by Section 605 of the Federal Communications
Act of 1934. Prior to the enactment of Title III, there
was authority for the broad applicability of Section 605
to the interception and disclosure of 'any communica-
tion,' including pen registers * * * The amendment of
Section 605 effected by Title III restricted the coverage
of that section to radio communications, and withdrew
the interception of wire or oral communications from
the ambit of the section, making Title III the sole
governing provision." 538 F2d at 958-959.

The testimony regarding the pen register evi-
dence was given by a telephone company em-
ployee, John Ellison. When this witness was
called, defense counsel objected on Fourth Amend-
ment grounds. Following questioning of this wit-
ness outside the presence of the jury, the district
court ruled the actions by the Bell Telephone
Company not to be governmental action.

Mr. Ellison testified that, in response to a call by
complainant, he put a group number trap on their
line in early January, 1975. This device indicated
that the Toundaians were getting many calls from
several different locations. The device was placed
back on the Toundaian's line in late January,
1975, and this time the group number trap indi-
cated that two calls came from the 644 office in
Birmingham.

On January 5th, the phone company put a piece
of equipment, not a pen register, on the line from
which calls were emanating, and this equipment
showed that there were six calls made within a
four-minute period, between 11:15 and 11:18, to
the complainants' phone from a phone registered
to defendant Richard Hayes. Mr. Ellison advised
Detective Bennett of this on February 12th. Mr.
Ellison testified that Detective Bennett "requested
more evidence". A pen register was installed the

same day, February 12th. Charles Toundaian testi-
fied that he " * * * talked to Detective Bennett
daily". And, later, Mr. Ellison testified, "We deal
in law enforcement * * * liaison with law enforce-
ment items such as this".

Reading these statements together, we are left
with the firm conviction that the police were guid-
ing the investigation of defendants through the
agency of the telephone company and its em-
ployees. On this basis, we cannot agree with the
trial court's finding that there was no state action,
and must reverse. See *People v Smith,* 19 Mich
App 359; 172 NW2d 902 (1969).

Defendants also claim they were convicted un-
der an ordinance which is so vague and overbroad
as to violate both the First and Fourteenth
Amendments to the United States Constitution.

The Dearborn Heights Ordinance 9.223 reads:

"It shall be unlawful for any person to telephone any
other person repeatedly or cause any person to be
telephoned repeatedly for the sole purpose of harassing
or molesting such other person or his family, whether
or not conversation ensues, except for telephone calls
made for legitimate purposes."

The ordinance must be presumed to be constitu-
tional. *Watnick v Detroit,* 365 Mich 600; 113
NW2d 876 (1962).

Words must be given their common meaning
unless a contrary intent is clearly shown. *People v
Smith,* 246 Mich 393; 224 NW 402 (1929).

The defendants cite *Walker v Dillard,* 523 F2d 3
(CA 4, 1975). However, in *Walker* we find this
language:

"We start from the proposition that the state has a
legitimate interest in prohibiting obscene, threatening

and harassing phone calls, none of which are generally thought of as protected by the First Amendment."

We are not persuaded that a person of common intelligence would have to guess at the meaning of "harassing or molesting" within the context of an ordinance prohibiting repeated phone calls for this sole purpose. We find no basis for declaring that the ordinance involved is unconstitutionally vague or overbroad.

Since this matter will be retried, we do not find it necessary to discuss the refusal on the part of the trial court to grant a continuance on the basis that the defendants were entitled to be represented by an attorney of their own choice. And, on that same basis, we find it unnecessary to pass upon the sentence of the district court involving the denial of the use of a telephone.

We reverse the judgment of the Wayne County Circuit Court and remand this matter to the District Court of the City of Dearborn Heights for a new trial.