Richard VON LUSCH et al.

v.

C & P TELEPHONE COMPANY et al.

Civ. No. Y–75–1137.

United States District Court, D. Maryland.

Sept. 20, 1978.

■■■■■■■■■■■

Philip W. Moore, Easton, Md., for plaintiffs.

Charles P. Featherstun, Baltimore, Md., William A. Franch, Annapolis, Md., Franklin Goldstein, Baltimore, Md., for defendants.

JOSEPH H. YOUNG, District Judge.

The defendants, Eugene Grannan, Julius Grollman and the Chesapeake and Potomac Telephone Company (hereafter C&P) have filed motions for summary judgment on the remaining causes of action pending against them. The plaintiffs, Richard and Marie Von Lusch, have opposed the defendants' motions and have themselves requested summary judgment. The pending claims are under [42 U.S.C.A.] § 1983 and state law against all the defendants and under 47 U.S.C. §§ 202 and 605 against C&P.

The genesis of the dispute between the parties was the construction of the Bay Bridge Airport in the mid-1960's vigorously opposed by the plaintiffs. Their opposition included the erection of signs, appeals to the County Commissioners at meetings and by telephone calls to their offices, and a zoning challenge in the state courts. *See Von Lusch v. Board of County Commissioners of Queen Anne's County*, 268 Md. 445, 302 A.2d 4 (1973); *Von Lusch v. Board of County Commissioners of Queen Anne's County*, 24 Md.App. 383, 330 A.2d 738 (1975). These efforts ultimately proved to be unsuccessful and the Airport has continued in operation.

Beginning in 1973, Von Lusch also demonstrated his displeasure by repeatedly telephoning the home and business of defendant Grollman and The Bay Bridge Airport whose manager was defendant Grannan.

Subsequently, C&P, reacting to complaints lodged by Grollman and Grannan, placed a pen register[1] on the plaintiffs' telephone. The instrument indicated that on May 5, 1974 (a Sunday) Von Lusch called Grollman at his home or business 41 times. It also picked up 12 calls to the Bay Bridge Airport within a short period on the same day.

Based on this evidence and complaints sworn out by both Grollman and Grannan, Von Lusch was convicted of using the telephone to make repeated calls with an intent to annoy, abuse, torment and harass in violation of Art. 27, § 555A of the Maryland Annotated Code. The conviction was appealed and eventually reversed and remanded by the Court of Appeals for a new trial. On remand, Von Lusch was again convicted. The Court of Special Appeals affirmed in a written opinion, 39 Md.App. 517, 387 A.2d 306, filed June 9, 1978 (No. 1069) and the Court of Appeals denied Von Lusch's subsequent petition for a writ of certiorari on August 18, 1978.

The first of the plaintiffs' remaining causes of action states a claim under § 1983, over which the Court has jurisdiction pursuant to 28 U.S.C. § 1343. Specifically, the plaintiffs complain that the defendants investigated and prosecuted Von Lusch in violation of their constitutional rights.

As a prerequisite to a cause of action under § 1983, the plaintiffs must establish that the defendants acted "under color of state law." The Court previously denied a motion to dismiss on this ground because of an allegation in the complaint that C&P and Grannan conspired with Grollman who was acting in his official capacity as County Commissioner. Perhaps because they recognize that it cannot withstand the scrutiny of summary judgment, the plaintiffs no longer urge this theory of state action.

■■ Instead the plaintiffs first argue that by placing a pen register on their telephone and in collecting information with which to prosecute Von Lusch, C&P

---

1. A pen register records the numbers dialed from a particular telephone. It does not disclose the contents of any conversation nor does it indicate whether any calls were completed.

(acting in concert with the other defendants) was performing a "public function" and thus was acting "under color of law." *See Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *cf., Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); *Jackson v. Met. Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Referring to the negative implications of the Supreme Court's application of the doctrine in *Jackson v. Met. Edison Co., supra,* the plaintiffs contend that the investigation of criminal activity is a task ordinarily performed by the State and posit that there is a "nexus between the challenged action and the involvement of the State."

However, the Tenth Circuit in *VE-RI-TAS, Inc. v. Advertising Review Council of Metro. Denver, Inc.*, 567 F.2d 963 (1977), refused to apply the public function doctrine to find state action in circumstances very similar to those found here. In that case, the Better Business Bureau investigated and referred to the District Attorney non-member businesses who did not comply with the Bureau's standards for truthful advertising. The court concluded:

> All in all, we must say however that the facts show the activities and the relationships to closely approach the public function line, but do not cross it. The evidence is sparse on the use of the BBB, and the related entities, by the law enforcement agencies. They react to submissions by the BBB, but obviously initiate their own investigations and procedures. The BBB clearly does not function as an arm of official enforcement. We thus hold that the test of a public function has not been met.

567 F.2d at 965.

Similarly here there is no evidence to indicate that the state law enforcement officials rely exclusively on C&P pen register information. They clearly use it as evidence but they do not order its obtention or

delegate the responsibility for developing a prosecution to the telephone company.

In several cases wiretaps initiated by a telephone company have been held not to constitute the state action necessary to support a criminal defendant's motion to suppress evidence. *United States v. Auler*, 539 F.2d 642 (7th Cir. 1976); *United States v. Clegg*, 509 F.2d 605 (5th Cir. 1975). According to the Supreme Court in *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267, n. 7 (1966), the state action required by the Fourteenth Amendment is the equivalent of "under color of law" required by § 1983. Later, in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 171, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Court seemed less sure of this, but implied that, if anything, a showing of state action under § 1983 would require more state involvement than a showing under the Fourteenth Amendment. *See* 398 U.S. at 210, 90 S.Ct. 1598, (Brennan J., dissenting).

This analogy is reinforced by the fact that in both contexts, the private utilities have acted for purposes other than law enforcement. Generally, in the wiretap cases the companies have sought to protect their own property. Here C&P has provided a service for its customers in connection with the product sold to them.[2]

For these reasons, the public function doctrine is inapplicable and the plaintiffs' argument on this ground must be rejected.

██ In the alternative, the plaintiffs argue that C&P (and its co-defendants) were willful participants with the State in the investigation and prosecution of Von Lusch. If established, this would constitute activity "under color of state law" as required by § 1983. *See Adickes v. S. H. Kress & Co., supra,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, the plaintiffs have failed to adduce any facts which would support an inference that defendants were acting pursuant to an understanding or agreement, explicit or implicit, with the State.

**2.** Apparently, annoying telephone calls have been of increasing concern to the Bell System. C&P indicates that the 750,000 complaints received throughout the system in 1969 grew to 1.2 million by 1974.

They have presented no facts or circumstances which would indicate that there was any contact by any of the defendants with state law enforcement agencies before the pen register was installed. Conversely, each defendant has expressly sworn that there was no such contact.

Moreover, the undisputed facts show that defendants Grannan and Grollman, annoyed by Von Lusch's repeated telephone calls, complained to the telephone company which responded according to its ordinary practice. Only when they had obtained facts to support their complaint did the defendants report the matter to the police. The mere filing of a complaint by private citizens does not constitute state action. *See Perkins v. Rich*, 204 F.Supp. 98 (D.Del.1962), *aff'd*, 316 F.2d 236 (3rd Cir. 1963).

It is true that C&P generally refuses to place a pen register on a telephone unless the complainants intend to prosecute. This policy, however, is not at the insistence or suggestion of the State but is intended to avoid implementation of the procedures when not warranted.

Not only have the plaintiffs failed to make a prima facie showing of action under color of state law, they have also failed to make the required showing of an invasion of their constitutional rights. The complaint includes alleged infringements of the plaintiffs' right to privacy, their protection against unlawful searches and seizures, and their First Amendment rights to petition the government and of free speech. Also raised earlier in these proceedings was the possibility of a due process deprivation in the allegation of a conspiracy to procure Von Lusch's conviction. Nevertheless, none of these averments can be supported in the face of the defendants' motion for summary judgment.

■ No right to privacy, separate from a Fourth Amendment claim, is at stake here. Such "penumbral" rights are of a different order and a far more intimate nature. *See Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 117 (1973).

The plaintiffs have consistently argued that the deployment of a pen register on their phone constituted an unlawful search and seizure. While the installation of a pen register is clearly not subject to the restrictions of the federal wiretap statute, 18 U.S.C. §§ 2510–2520, its use would arguably implicate Fourth Amendment rights.

■ The better view, however, is that the operation of a pen register cannot violate Fourth Amendment rights. *Hodge v. Mountain State Tel. & Tel. Co.*, 555 F.2d 254, 256–257 (9th Cir. 1977); *United States v. Clegg*, 509 F.2d 605, 610 (5th Cir. 1975). The courts so ruling have reasoned that the intrusion of a pen register, which reveals nothing of the content of the call, is less than that involved in the obviously permissible practice of keeping a billing record of a long distance call. In short, there is no justifiable expectation of privacy in the fact that a call has been made. Therefore, the installation of the pen register did not invade the Fourth Amendment rights of the plaintiffs.

■ Von Lusch's state criminal conviction precludes him from raising the remaining alleged constitutional deprivations. It is well established that a prior criminal judgment can preclude a civil action. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569, 71 S.Ct. 408, 95 L.Ed. 534 (1951); *Moore v. United States*, 360 F.2d 353 (4th Cir. 1966). Strict mutuality of estoppel is no longer required. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). What is required is that the party against whom the plea of estoppel is asserted must have been a party to the prior adjudication. *Cardillo v. Zyla*, 486 F.2d 473 (1st Cir. 1973). Thus, even though the defendants were not involved as parties in the state criminal case, collateral estoppel can work against Von Lusch.

In *Rimmer v. Fayetteville Police Dept.*, 567 F.2d 273 (4th Cir. 1977), the Fourth Circuit employed the doctrine of collateral estoppel to preclude in a § 1983 action the

relitigation of issues previously decided in a state criminal case.

In so ruling, the *Rimmer* court expressly adopted the reasoning of *Mastracchio v. Ricci*, 498 F.2d 1257, 1259–1260 (1st Cir. 1974) and Part IV of Judge Tjoflat's dissent in *Meadows v. Evans*, 550 F.2d 345 (5th Cir. 1977). Both concluded that the collateral estoppel effect encompassed all issues necessarily decided in the criminal judgment.

At the same time, *Rimmer* strongly suggests that the preclusion applies only to issues which can be presented to a federal court via a petition for habeas corpus. 567 F.2d at 277. Such a limitation on the effect of estoppel avoids a conflict with the obvious intent of Congress in enacting the 1871 Civil Rights Act to preserve a federal forum for victims of constitutional deprivations by state action.

■ Von Lusch's second criminal conviction, affirmed by the Maryland appellate courts, by definition involved the litigation and adverse resolution of any allegation in the present case that there was a conspiracy to prosecute him in violation of his constitutional rights. Certainly the ingredients of such a claim, fabricated charges and perjured testimony, have been fully litigated in the state criminal proceedings. Moreover, to the extent that the claim implicates constitutional rights it can be tested on federal habeas corpus.

■ Von Lusch also contends here that the prosecution interfered with his First Amendment rights. His conviction for misuse of the telephone, however, necessarily carried with it a judgment that the speech involved was unprotected. *See Palma v. Powers*, 295 F.Supp. 924 (N.D.Ill.1969). Moreover the Court of Special Appeals directly treated and rejected this contention in its affirmance:

> The appellant makes the additional argument that *Caldwell v. State*, 26 Md. App. 94, 337 A.2d 476, to the contrary notwithstanding, Section 555A is unconstitutional because of the chilling effect it may have upon the First Amendment. The argument misperceives the values protected by that amendment. The right to express ideas does not include the right to impose the communication of those ideas upon an unwilling listener. *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). The Maryland statute does not prohibit speech or communication as such. It simply protects one from the harassment and annoyance of having his own telephone used in an abusive fashion by an unwanted intruder upon his privacy. Citizens have a right to speak. Citizens also have a right not to be forced to listen. Freedom of speech does not encompass the right to abuse the telephone with the specific intent to annoy and to harass the recipient of the call. *Caldwell v. State, supra.*

39 Md.App. 517, 387 A.2d 306, 310.

Thus, the contention that Von Lusch was exercising his First Amendment rights in using the telephone as he did has been fully litigated. It can form the basis of a petition for a federal writ of habeas corpus, but it cannot be further pressed in this proceeding.

■ Von Lusch also seems to suggest that the defendants conspired to prosecute him in retaliation for his opposition to the Airport, thus chilling his First Amendment rights to voice his feelings on that subject.

However, the lawful prosecution and conviction of Von Lusch chilled only the type of speech for which he was prosecuted. Von Lusch was and remains free to speak in a lawful manner on any topic he wishes. When and if Von Lusch is ever restricted in attempting to exercise these rights, he will have an ingredient for a cause of action under § 1983.

At the same time the defendants are free to call on the State to lawfully prevent or punish illegal activity. Von Lusch is free to debate within the confines of the law but when he steps out of those bounds he cannot expect to be shielded by the First Amendment.

■ Of course, plaintiff Marie Von Lusch, not having been a party to the criminal proceedings cannot be precluded on es-

toppel grounds. However, the undisputed facts clearly show that she was not subjected to a prosecution and that therefore she personally suffered neither of the alleged constitutional deprivations which are precluded by collateral estoppel.

Because of the plaintiffs' failure to establish the requisite state action and deprivations of constitutional magnitude, their cause of action under § 1983 must be dismissed. In so ruling, the Court takes no position on the other defenses raised in the defendants' motion for summary judgment.

The plaintiffs also press a claim against C&P under 47 U.S.C. § 605 for the allegedly unwarranted installation of the pen register. Before 1968, 47 U.S.C. § 605 restricted the interception of telephonic communications. However, in that year, along with the enactment of a comprehensive wiretap statute, Congress deleted any reference to wire communications in § 605. Thus, the installation and operation of pen registers on telephone wires are no longer governed by § 605. *United States v. New York Tel. & Tel. Co.*, 434 U.S. 159, 168, 98 S.Ct. 364, 54 L.Ed.2d 376, n. 13 (1977).

The plaintiffs further complain that C&P violated § 202 of Title 47, U.S.C. which prohibits "unjust or unreasonable" discrimination in like services rendered by a common carrier. Section 207 gives a party thus aggrieved a cause of action in a Federal District Court. Jurisdiction over such an action is pursuant to 28 U.S.C. § 1337.

Plaintiffs claim that C&P refused their request to have listening devices placed on their phone to trace the calls of others while at the same time installing a pen register when asked to by Grannan and Grollman.

Leaving aside the question of whether under the circumstances of this case, the failure to grant Von Lusch's request was unreasonable or unjust, the alleged discrimination here did not involve "like" service. The installation of a device which intercepts the content or identifies the source of a caller is a more substantial undertaking, involving a greater degree of intrusion than a device which records only

the making of a call. Accordingly, C&P employs different procedures before installing these devices. Therefore this allegedly disparate treatment cannot be the basis of a cause of action under § 202.

Finally, the plaintiffs have attacked state law claims, requesting that the Court invoke pendent jurisdiction over them. However, because the federal claims to which these are appended will be dismissed, the state claims must fail as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Having concluded that the defendants are entitled to summary judgment on all counts, it naturally follows that the plaintiffs' motion for summary judgment must be denied.

Accordingly, it is this 20th day of September, 1978, by the United States District Court for the District of Maryland, ORDERED:

1. That the defendants' motions for summary judgment be, and the same are, hereby GRANTED; and

2. That the plaintiffs' motion for summary judgment be, and the same is, hereby DENIED.