DISTRICT ATTORNEY FOR THE PLYMOUTH DISTRICT *vs.*
ROBERT A. COFFEY.

Plymouth. February 1, 1982. — May 12, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, State action,
Telephone company, Cross frame unit trap.

Installation of a device to determine the source of incoming calls on a
customer's telephone line by a telephone company at the customer's re-
quest did not constitute a search within the scope of the Fourth
Amendment to the United States Constitution or art. 14 of the Massa-
chusetts Declaration of Rights. [220-222] LIACOS, J., concurring.

Installation by a telephone company of a device to determine the source
of incoming calls on a telephone line and the company's disclosure of
the results to a district attorney were authorized by G. L. c. 272, § 99
D 1 a. [222-224] LIACOS, J., concurring.

The requirement of G. L. c. 272, § 99 O 1, that a criminal defendant
must be served with copies of certain documents if at his trial the
government intends to use evidence obtained through electronic sur-
veillance, is not applicable to evidence obtained by a telephone com-
pany through installation of a cross frame unit trap on a telephone
line. [224-225]

The Federal Communications Act of 1934, 47 U.S.C. § 605 (1976), does
not regulate the use of a device on a telephone line to determine the
source of incoming calls. [225-226]

COMPLAINTS received and sworn to in the Second Ply-
mouth Division of the District Court Department on May
13, 1980.

A pretrial motion to suppress was heard by *Tamkin, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Samuel Lazarus*, Assistant District Attorney, for the
plaintiff.

*Daniel G. Raymondi*, for the defendant.

NOLAN, J.  The defendant was charged with three violations of G. L. c. 269, § 14A.  The complaints alleged that he used the telephone repeatedly for the sole purpose of harassing, annoying, or molesting Elaine Coffey, his former wife.  A judge of a District Court, after a hearing, allowed the defendant's motion to suppress "[a]ny portions of the contents of any interception or any evidence derived therefrom as a result of the use of a pen register or similar device pertaining to the telephone number of the defendant's residence."  The Commonwealth appealed the allowance of that motion.  We transferred the case here on our own motion.  We reverse the order allowing the motion to suppress.

The parties have submitted a statement of agreed facts.  On or about February 1, 1980, Mrs. Elaine Coffey called the Annoyance Call Bureau of New England Telephone Company (company), to report annoying telephone calls.  At her request the company installed an XFVT on-line trapping system, commonly called a cross frame unit trap, on Mrs. Coffey's telephone line.  This system allowed the company to determine the source of incoming calls to Mrs. Coffey's line.  The trapping system did not, and was not designed to, record any conversation.[1]  The company, on three successive dates, traced the reported annoyance calls to the defendant's unlisted residential telephone number.  The defendant was unaware of the existence or operation of the unit.  Mrs. Coffey signed complaints against the defendant, alleging violations of G. L. c. 269, § 14A.  A search

---

[1] The use of a cross frame unit trap has been analyzed by this court and by other courts in the same manner as the use of a pen register. See *District Attorney for the Plymouth Dist.* v. *New England Tel. & Tel. Co.*, 379 Mass. 586, 590-591 (1980); *Michigan Bell Tel. Co.* v. *United States*, 565 F.2d 385, 388 & n.5 (6th Cir. 1977).  A pen register records the numbers dialed from a particular telephone line.  A cross frame unit traces the telephone numbers of calls coming into the monitored telephone line.  The differences between the two devices are not significant for the purposes of this opinion.  Both the pen register and the cross frame unit trap differ from a wiretap or intercept, by which the content of a telephone call can be heard or recorded.

warrant was neither applied for nor obtained by the Commonwealth.

The defendant filed a motion to suppress the evidence, alleging as grounds that the evidence was obtained in violation of his right to be secure from an unreasonable search and seizure as guaranteed by the Fourth Amendment to the United States Constitution, and art. 14 of the Massachusetts Declaration of Rights, set forth in the margin.[2] The defendant further alleged that the use of the device without a warrant violated § 605 of the Federal Communications Act of 1934, as amended by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 (1976). The judge relied on *Smith* v. *Maryland*, 442 U.S. 735 (1979), and concluded that the installation of a cross frame unit trap at the telephone company office was not a search within the meaning of the Fourth Amendment. He also concluded that the use of the trap did not violate § 605 because that section did not prohibit the use of pen registers or similar devices. However, he concluded that the Commonwealth had conducted an improper search under art. 14 of the Massachusetts Declaration of Rights. In reaching this conclusion, the judge stated his reliance on our decision in *District Attorney for the Plymouth Dist.* v. *New England Tel. & Tel. Co.*, 379 Mass. 586 (1980). The judge allowed the motion to suppress on the basis of art. 14.

*State action.* At the outset we must determine whether the degree of State involvement with the challenged conduct is sufficient to raise the constitutional issue. The judge did not discuss this threshold question. It is well settled that the Fourth Amendment to the United States Constitution

---

[2] Article 14 provides: "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."

applies only to searches and seizures conducted by or at the direction of the State. "Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies." *Burdeau* v. *McDowell,* 256 U.S. 465, 475 (1921). Consequently, evidence illegally obtained by private parties and turned over to the police is not a violation of the Fourth Amendment. *Id.* The same considerations apply to art. 14. Neither the Fourth Amendment nor art. 14 is implicated when the State is not involved in the private "search," even when the evidence is subsequently given to the police. See *Commonwealth* v. *Weiss,* 370 Mass. 416, 419 (1976) (search of locker by airport attendant does not bring the Fourth Amendment into play); *Commonwealth* v. *Mahnke,* 368 Mass. 662, 676-678 (1975); *Commonwealth* v. *Storella,* 6 Mass. App. Ct. 310, 313 (1978) (bullet removed from defendant and turned over to police does not implicate Fourth Amendment). The constitutional analysis is triggered only when either the Federal or State government is significantly involved in the search, either participating in it or directing it in some way. *United States* v. *Winbush,* 428 F.2d 357, 359 (6th Cir.), cert. denied, 400 U.S. 918 (1970). See generally Admissibility, in Criminal Case, of Evidence Obtained by Search by Private Individual, 36 A.L.R.3d 553 (1971 & Supp. 1981).

It is unnecessary to discuss the minimal level of governmental involvement required for a private search to be considered a State search, because the record before us shows no governmental involvement whatsoever. Neither the judge's findings contained in his memorandum, nor the statement of agreed facts mentions any State participation in or knowledge of the placement of the cross frame unit trap on Mrs. Coffey's telephoné line. The defendant's brief alleges that she "had been in contact . . . with the local police department." Even assuming this to be true, the defendant does not allege that the police had any knowledge of the telephone company's actions. In short, there is no evidence in the record before us that could conceivably lead to a finding of significant State involvement in the search.

The defendant argues that we should find State action because the telephone company is regulated by the Commonwealth and has developed an agency-partnership relationship with the State. There is no evidence in the record of any relationship between the telephone company and the State. It is settled that the mere fact that a public utility is subject to State regulation does not necessarily imply State action whenever the utility acts. *Jackson* v. *Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974). In determining whether State action exists, the inquiry does not turn on the relationship between the private entity and the State in general, but rather focuses on the relationship of the State to the challenged action of the regulated entity. *Id.* at 351. Here, there is no evidence that the State significantly involved itself in placing the cross frame unit trap on Mrs. Coffey's phone and, therefore, a finding of State action is not warranted. See *Bello* v. *South Shore Hosp.*, 384 Mass. 770, 775-777 (1981); *State* v. *Droutman*, 143 N.J. Super. 322, 328-335 (1976) (activity of telephone company placing trace on defendant's telephone line to determine source of harassing calls was not State action). Because the actions of the telephone company cannot be viewed as State action, the evidence derived from placement of the cross frame unit trap should not be suppressed on the basis of a violation of either the Fourth Amendment or of art. 14. Reliance on our decision in *District Attorney for the Plymouth Dist.* v. *New England Tel. & Tel. Co.*, 379 Mass. 586 (1980), is misplaced because in that case the district attorney had obtained a warrant and a court order directing the telephone company to install a cross frame unit trap. The State involvement in that case which raised the constitutional issue is absent in the case before us today.

*General Laws c. 272, § 99.* The defendant argues as an additional ground for his motion to suppress that the evidence was illegally obtained in violation of G. L. c. 272, § 99, the Massachusetts wiretap statute. General Laws c. 272, § 99 P, provides in part that a defendant in a criminal trial may move to suppress "the contents of any inter-

cepted wire or oral communication or evidence derived therefrom" because, among other reasons, the communication was unlawfully intercepted or because the communication was not intercepted in accordance with the terms of § 99.

We decided in *District Attorney for the Plymouth Dist.,* *supra* at 591-592, that the installation of a cross frame unit trap is regulated by the provisions of G. L. c. 272, § 99. Because one of the exceptions to the prohibitions of § 99 includes persons duly authorized to make specified interceptions by a warrant, G. L. c. 272, § 99 D 1 d, as appearing in St. 1968, c. 738, § 1, we held that the interception in that case was authorized by the statute. The present case does not come within the warrant exception because no warrant was sought or obtained, but it clearly comes within the exception provided for in G. L. c. 272, § 99 D 1 a, which provides under heading 1: "Permitted interception of wire or oral communications. It shall not be a violation of this section — a. for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of service, . . . *or which is necessary to prevent the use of* *such facilities in violation of section fourteen A of chapter* *two hundred and sixty-nine of the general laws"* (emphasis supplied). This exception expressly permits the telephone company to intercept and disclose communications when necessary to prevent unlawful, harassing phone calls. The telephone company did not violate § 99 by placing the device on Mrs. Coffey's phone at her request, nor did the company violate § 99 in disclosing the results obtained by the cross frame device to the district attorney to prevent the use of the company's facilities in violation of G. L. c. 269, § 14A. Section 99 expressly authorizes the telephone company's actions. We noted in *Commonwealth* v. *Coviello,* 362 Mass. 722, 724 n.1 (1973), that § 99 D 1 a authorizes the telephone company to take actions such as these to prevent

violations of G. L. c. 269, § 14 A.  See *Martin* v. *DeSilva,* 566 F.2d 360 (1st Cir. 1977), cert. denied, 435 U.S. 1010 (1978).  In addition, G. L. c. 272, § 99 D 2 c, permits disclosure in a criminal proceeding of evidence derived from communications which are lawfully intercepted in accordance with § 99.

The defendant further argues that § 99 O 1 prohibits the introduction of the evidence obtained by the telephone company because he was not served in accordance with the provisions of § 99 O 1 at least thirty days before commencement of the criminal trial.  Section 99 O 1 provides in pertinent part: "[I]n any criminal trial where the commonwealth intends to offer in evidence any portions of the contents of any interception or any evidence derived therefrom the defendant shall be served with a complete copy of each document and item which make up each application, renewal application, warrant, renewal order, and return pursuant to which the information was obtained . . . ."  If the defendant is not served with the enumerated documents at least thirty days before the commencement of the criminal trial, the evidence is inadmissible at the trial.  We note at the outset that the defendant's trial has not yet commenced.  The case is before us on the Commonwealth's appeal of the allowance of the motion to suppress.  Therefore, even if we were to interpret § 99 O 1 as applicable to the evidence obtained here, the evidence would be admissible after the Commonwealth serves the defendant thirty days prior to trial.  We are persuaded, however, that § 99 O 1 does not apply to evidence obtained by the telephone company pursuant to its obligations under § 99 D 1 a.  We interpret § 99 O 1 to apply only to evidence obtained with a warrant. This interpretation is necessary because § 99 O 1 provides that the only papers to be served on a defendant pursuant to § 99 O 1 are "a complete copy of each document and item which make up each application, renewal application, warrant, renewal order and return pursuant to which the information was obtained."  These items do not exist in the present case since a warrant was never applied for nor obtained.

The Commonwealth cannot be expected to serve documents it does not have. Because the information concerning the defendant was lawfully obtained and disclosed pursuant to the exception contained in § 99 D 1 a, it is unnecessary and in fact impossible for the Commonwealth to comply with § 99 O 1. There is no merit to the defendant's argument that the information must be suppressed because of the provisions of § 99 O 1.

*The Federal wiretap statute.* The defendant's final argument is that the telephone company's warrantless installation of the cross frame unit trap and subsequent disclosure of the information derived therefrom violates 47 U.S.C. § 605 (1976), the Federal Communications Act of 1934. The defendant argues that the evidence should, therefore, be suppressed. The judge correctly ruled that the use of the cross frame unit trap did not violate § 605. In *Commonwealth* v. *Coviello,* 362 Mass. 722 (1973), we held that § 605 required suppression in a criminal trial of information obtained by a pen register installed without a warrant. Our reading of the then recently amended § 605 in *Coviello* has subsequently proved to be incorrect. In cases decided after *Coviello,* it has been determined by the Supreme Court of the United States as well as by a number of Circuit Courts of Appeal that neither 47 U.S.C. § 605 (1976), nor Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. (1976) (which prohibits certain interceptions of wire or oral communications), regulates the use of pen registers or similar trapping devices such as the cross frame unit used here. See *United States* v. *New York Tel. Co.,* 434 U.S. 159, 166-168 n.13 (1977); *United States* v. *Clegg,* 509 F.2d 605, 610 (5th Cir. 1975); *United States* v. *Falcone,* 505 F.2d 478, 482 (3d Cir. 1974), cert. denied, 420 U.S. 955 (1975); *United States* v. *Illinois Bell Tel. Co.,* 531 F.2d 809, 812 (7th Cir. 1976); *United States* v. *Southwestern Bell Tel. Co.,* 546 F.2d 243, 245 (8th Cir. 1976), cert. denied, 434 U.S. 1008 (1978); *Michigan Bell Tel. Co.* v. *United States,* 565 F.2d 385, 388 (6th Cir. 1977); *Hodge* v. *Mountain States Tel. & Tel. Co.,* 555 F.2d 254,

258 (9th Cir. 1977); *Martin* v. *DeSilva,* 566 F.2d 360, 361 (1st Cir. 1977), cert. denied sub nom. *Martin* v. *New England Tel. & Tel. Co.,* 435 U.S. 1010 (1978). In *District Attorney for the Plymouth Dist., supra* at 592, we acknowledged that although our Massachusetts wiretap statute regulated pen registers and cross frame unit traps, the Federal wiretap statute did not apply to these devices. To the extent that our interpretation of Federal law in *Coviello* is inconsistent with the United States Supreme Court's decision in *New York Tel. Co., supra,* we are bound by its construction of § 605. Accordingly, the allowance of the defendant's motion to suppress cannot be upheld on the basis of a violation of § 605.

The order allowing the defendant's motion to suppress is reversed.

*So ordered.*

LIACOS, J. (concurring). I concur in the result reached by the court. I think it useful to add a few comments concerning the admissibility of the fruit of "private" searches under art. 14 in general and the scope of the common carrier exemption under G. L. c. 272, § 99 D 1 a, in particular.

Article 14 of the Massachusetts Declaration of Rights provides: "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."

This court has recognized previously that our State Constitution may, in some circumstances, afford greater protections to individuals than are required by the Fourth Amend-

ment to the United States Constitution. See *Commonwealth v. Soares,* 377 Mass. 461 (1979); *Commonwealth* v. *Ortiz,* 376 Mass. 349, 358 (1978). In particular, we have made reference, on another occasion, to our ability to "adopt a broader definition of search under art. 14 of the Declaration of Rights than prevails under the Constitution of the United States." *District Attorney for the Plymouth Dist.* v. *New England Tel. & Tel. Co.,* 379 Mass. 586, 589 (1980). *Id.* at 595 n.1 (Hennessey, C.J., concurring), and at 597 n.1 (Liacos, J., dissenting). Compare *Smith* v. *Maryland,* 442 U.S. 735, 745-746 (1979).

The majority conclude that "[b]ecause the actions of the telephone company cannot be viewed as State action, the evidence derived from placement of the cross frame unit trap should not be suppressed on the basis of a violation of either the Fourth Amendment or of art. 14." *Supra* at 222. Implicit in this conclusion is the recognition that a search occurred, albeit not one in which the Commonwealth was involved sufficiently to trigger art. 14. Contrast *Smith* v. *Maryland, supra* at 739 n.4, 745-746 (where pen register installed by telephone company at police request, State action present, although no search held to have taken place); *Dearborn Heights* v. *Hayes,* 82 Mich. App. 253 (1978) (police requested telephone company action). Here, the telephone company placed the cross frame unit trap on the line of a customer at her request. When an employee of the company determined that the annoying phone calls were coming from the defendant's telephone, the customer signed complaints against the defendant, alleging three separate criminal violations of G. L. c. 269, § 14A. A keeper of the records from the company testified in court in response to a subpoena duces tecum issued by the district attorney for the Plymouth District. If the company is to be deemed to be acting on behalf of another in this case, that other party is not the Commonwealth. Accord, *Von Lusch* v. *C & P Tel. Co.,* 457 F. Supp. 814, 818 (D. Md. 1978); *State* v. *Droutman,* 143 N.J. Super. 322 (1976). The court correctly concludes that this record fails to establish that State action was

involved in the installation and use of the cross frame unit trap. Cf. *Commonwealth* v. *Richmond,* 379 Mass. 557, 561-562 (1980); *Commonwealth* v. *Weiss,* 370 Mass. 416, 419 (1976).

Although no violation of art. 14 is shown in this case, it should be clear that art. 14 may not, in all circumstances, permit the introduction of evidence seized unlawfully by a private party. See *Burdeau* v. *McDowell,* 256 U.S. 465, 476-477 (1921) (Brandeis & Holmes, JJ., dissenting). The justification most commonly given for the nonapplication of the exclusionary rule to the fruits of private searches is that no deterrent purpose would be served by its application to the actions of private persons. See 1 W.R. LaFave, Search and Seizure § 1.6, at 110-114 (1978). This may be true, generally, at least where the government did not participate in or instigate the search. *Id.* However, *Burdeau* may lose its validity where the "private" search, although carried out by a private entity, is pursuant to a public policy, the dominant purpose of which is the prevention of crime. See W.R. LaFave, *supra* at 129. In this vein, at least one State court has suppressed the fruits of an unlawful "private" search, which was "an exercise of sovereignty allowed by the State to private citizens," as violative of the provisions of its State Constitution. *People* v. *Zelinski,* 24 Cal. 3d 357, 367-368 (1979). Cf. *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 741 (1981).

The court holds today, in accordance with our previous decisions, that the use of pen registers and cross frame unit trap devices is regulated by G. L. c. 272, § 99. *Supra* at 223. See *District Attorney for the Plymouth Dist.* v. *New England Tel. & Tel. Co., supra* at 591-592. Protection of the fundamental privacy interests secured by art. 14 is enhanced by the limitations imposed on the use of such devices by G. L. c. 272, § 99. See *id.* at 598-600 (Liacos, J., dissenting).

We have noted that G. L. c. 272, § 99 D 1 a, "expresses the intention that an employee of any communication common carrier may properly without a warrant intercept, dis-

close or use the contents of a communication where that interception, disclosure or use is necessary to prevent the use of that company's facilities in violation of G. L. c. 269, § 14A." *Commonwealth* v. *Coviello,* 362 Mass. 722, 724 n.1 (1973). The same subsection also provides that it shall not be a violation of § 99 for a telephone company employee to intercept or disclose a communication where such action is "a necessary incident to the rendition of service or to the protection of the rights or property of the carrier of such communication." Thus, under this exemption, the telephone company is authorized to intercept and disclose communications in furtherance of its dual interest in protecting the integrity of its lines and to prevent the use of its property for criminal purposes.

It should be kept in mind, however, that a significant but oft-ignored inquiry in the determination whether certain conduct constitutes State action is "whether federal or state law can validly distribute authority between governmental and private actions as it purports to do." L.H. Tribe, American Constitutional Law § 18.3, at 1158 (1978). The State has authorized the company to intercept communications for two limited purposes. Where, as here, the record discloses that the dominant purpose behind the search by the company is the protection of its lines and the rendition of quality service, and the resulting criminal prosecution was merely incident to that company purpose, the use of the evidence obtained did not offend art. 14 of the Declaration of Rights and is properly within the exception to the warrant requirements of G. L. c. 272, § 99. Compare G. L. c. 272, § 99 E - N, with G. L. c. 272, § 99 D 1 a. Accord, *United States* v. *Harvey,* 540 F.2d 1345, 1352 (8th Cir. 1976). Under other circumstances, with a record which disclosed an intent not to vindicate the company's interests, but rather to further a State interest in the prosecution of wrongdoers, I would reach a different conclusion. See *People* v. *Zelinski, supra.*