Welch, J.
After conducting a hearing on the defendant’s motion to suppress, this Court makes the following findings of fact.
John Kane, a resident of Saugus, Massachusetts, returned home around midnight on August 4, 1995. John Kane had recently obtained a job with the Middlesex County Sheriffs Department. Previously, he had been employed as a handyman and was known within the Saugus community for his work as a handyman.
John Kane owned a “programmable Bearcat scan: ner. ’’ As was his habit, upon returning home, Mr. Kane turned on the scanner. Mr. Kane’s scanner had the ability to be set at particular frequencies. This particular scanner permitted the user to select frequencies for particular police departments, or portable and cellular phones, taxi cab dispatches, and other transmissions. Mr. Kane had previously programmed his scanner so that it would pick up the frequencies of portable and cellular phone conversations in the area. Mr. Kane did this by obtaining the frequency ranges from a commercially available book. Mr. Kane preset his scanner to listen in on portable and cellular phone conversations as a voyeuristic hobby and from his scanner he obtained enjoyment from listening to these calls being broadcast from his scanner.
In addition to setting his scanner for cellular and mobile phone frequencies he also set the scanner to pick up various police department transmissions including Boston, Lynn, Melrose, Saugus and other communities.
Lying in bed at what was now 12:55 a.m. on August 4, 1995, Mr. John Kane was listening to the scanner and heard a call being picked up by the scanner. Because the call was being made relatively nearby, the scanner “froze" on this call and continued to transmit it (instead of scanning on to some other conversation). The substance of the call pricked Mr. Kane’s interest because the substance indicated that a man and a woman were talking about running and hiding something and that someone had been hit once on the back and on the arm. Mr. Kane suspected that this conversation might relate to some sort of criminal activity. After listening to the call for about five or ten minutes he called the Saugus police department and spoke to a Sergeant David Putnam, the officer in charge of the late shift.
Sergeant Putnam knew John Kane because he, or his family, had hired John Kane as a handyman. At the time, Sergeant Putnam might also have known that John Kane was also employed by the Middlesex County Sheriffs Department. In any event, Sergeant Putnam received this call as he would a call from any other civilian. There is little doubt that Mr. Kane turned on the scanner, listened to the phone call, and made the call to the Saugus Police Department solely in his capacity as a private citizen. The fact that he was employed by the Middlesex County Sheriffs office is of no relevance.
Mr. Kane asked Sergeant Putnam if any type of activity was going on in Mr. Kane’s neighborhood and explained to Sergeant Putnam that he had overheard a suspicious phone call on his scanner. Sergeant Putnam responded that there had been a stabbing a *457 short distance from Mr. Kane’s home. Mr. Kane briefly told Sergeant Putnam about the call he had overheard and stated information along the lines that a man by the name of Anthony and a woman by the name of Carmen were talking to each other about a possible stabbing and the hiding of clothes and the use of a beeper. Sergeant Putnam responded by telling Mr. Kane to keep a log of the phone conversation and to call him if anything else happened. Sergeant Putnam also told Mr. Kane that another Saugus police officer by the name of Coburn would drop by sometime on the next day to pick up any log kept by Mr. Kane.
Although he certainly never discouraged Kane from doing so, Sergeant Putnam never instructed or ordered Mr. Kane to continue listening for further telephone conversations. Sergeant never instructed Mr. Kane to record any overheard telephone conversation. In addition, Mr. Kane never informed Sergeant Putnam that he was considering recording the conversation.
This was the extent of the conversation between Mr. Kane and Sergeant Putnam because it was a veiy busy evening for Sergeant Putnam. He was the officer in charge of the late night shift and there was a variety of business to attend to.
Around 1:15 a.m. on August 5, 1995, Mr. Kane, after having spoken to Sergeant Putnam, began writing a very brief summary of what he had previously overheard. Kane then proceeded to note, in a veiy summary log format, a series of telephone conversations that he was picking up on the scanner. The vast majority of these conversations appeared to be conversations between the same two people. It is conceded that these conversations which were overheard were conversations that took place on a portable telephone.
Mr. Kane shortly thereafter decided, at approximately 1:30 that morning, to record the conversations by means of utilizing the recording device on his answering machine. How Mr. Kane utilized the answering machine to record the conversations is unclear, but not of particular consequence to this motion. In any event, a recording of the portable phone conversations that Mr. Kane was overhearing from the scanner was made. Mr. Kane intercepted the radio portion of the cordless phone conversations which were being transmitted between the cordless telephone handset and the base unit. These conversations lasted from approximately 1:30 a.m. until approximately 1:50 a.m. The decision to record the overheard conversations was entirely that of Mr. Kane. At all times, Mr. Kane was acting as an ordinary civilian. As he was taping the phone calls, Kane was at no time acting in his capacity as an employee of the Middlesex County Sheriffs Department, nor as an agent of the Saugus Police. The next morning or afternoon, Saugus police officer Coburn got in touch with Mr. Kane and dropped by his home. At that time, Mr. Kane gave him a copy of the one-page log that he had kept in relation to the conversations. This log is very brief. In addition, Mr. Kane gave the tape that he had made of the overheard conversations. The defendant moves to suppress both the log and the tape recording.
LEGAL DISCUSSION
The defendant bases his motion to suppress on both constitutional and statutory grounds. To be more precise, the defendant argues that suppression is required to remedy violations of the federal and state constitutions and federal and state statutes which prohibit illegal wire tapping or electronic surveillance.
A. The Constitutions
In order for there to be a violation of the Fourth Amendment of the United States Constitution or Article XIV of the Massachusetts Declaration of Rights, there must be state action involved in the alleged unconstitutional seizure. When Mr. Kane recorded the conversations and when he wrote his summary of the conversations he had previously overheard (prior to contacting the Saugus Police Department), he was not acting under any state imposed direction or command. It is quite clear that Mr. Kane made the decision entirely on his own, and entirely as a private citizen, to write down what he had previously heard in the earlier telephone conversation (this portion of his recitation of the earlier conversation is contained in the top half of the one page marked as Exhibit 1). Likewise, it was entirely Mr. Kane’s decision to record the telephone conversations. Even though the Commonwealth was later the beneficiary of this privately initiated action, none of these activities constitute state action. In the absence of state action, there is no violation of either the federal or state constitutions and suppression cannot be based on those constitutional underpinnings. See Commonwealth v. Brzezinski, 405 Mass. 401, 405 (1989); District Attorney of Plymouth District v. Coffey, 386 Mass. 218, 221 (1982). See also Commonwealth v. James Crowley, App. Ct. No. 97-P-168 (Sept. 8, 1997).
As to the log of the calls (ie. the lower half of Exhibit 1), Mr. Kane did compile this material at the direction of the Saugus police. It is true that the Saugus police did not command him to do so. The Sergeant on duty, however, did make this request and Mr. Kane complied with it. The Saugus police also arranged to have Mr. Kane deliver this log to a police officer on the veiy next day. In this situation, Mr. Kane was acting as an agent of the state. Thus, state action is involved. The log, however, provides veiy little information and constitutes, at most, the most limited of intrusions upon a person’s privacy. In any event, the most cautious approach is to suppress that portion of Exhibit 1 (being the lower one half of the page) which constitutes the actual log upholds.
B. The State Statute
It is, of course the tape and the substantive description of the earlier calls that are the heart of the motion *458 to suppress. Being unable to raise a constitutional challenge to these materials, the defendant relies upon the Massachusetts and Federal statutes that prohibit illegal interceptions of wire communications. On the state side, the defendant relies upon the prohibitions contained in G.L.c. 272, §99(B)(4) and (C). Unlike in the Commonwealth v. Crowley case, supra, this is a situation where there has been an unconsented to tape recording of a telephonic conversation. Section 99(B) and (c) is phrased to include not only “wire” but also “oral” communications. Section 99 was drafted before the widespread use of cordless phone technology. This state law was based upon the then existing federal wiretapping statute which was interpreted to not cover such radio communications as cordless phone conversations. Thus, it is questionable whether Mr. Kane violated §99 in intercepting these conversations contained on a portable telephone.
Assuming, however, that such a state law violation occurred, Section 99(P) provides the defendant standing to seek suppression of this evidence. The section, however, does not mandate that all unlawfully intercepted communications should be suppressed. "The Legislature has left it to the courts to decide whether unlawfully intercepted communications must be suppressed.” Commonwealth v. Santoro, 406 Mass. 421, 423 (1990). The Appeals Court has recently confronted this issue and ruled that the exclusionary rule, which was fashioned to deter official misconduct, “applies only to government action; it does not reach purely private conduct...” Commonwealth v. Crowley, supra at p. 2. Because the tape recordings and the notations regarding the substance of the earlier intercepted conversation involved “purely private conduct,” there is no basis for suppressing these materials pursuant to c. 272, §99(P).
C. The Federal Statute
The federal statute also does not require the suppression of the tape recording in this instance. In 1994, the federal statute regulating the interception of communications, 18 U.S.C.S. §2510-20, was amended to include the radio portion of a cordless telephone call. Congress did this by removing the previous exemptions contained in definitions of “wire” and “electronic” communications. The radio portion of a cordless phone call is precisely what this case involves.
The 1994 amendment “extended to cordless phones and certain data communications transmitted by radio” the protections of the federal statute. The legislative history considers such cellular or cordless phone calls to be “wireless services.” The statute differentiates between “wire,” “oral” and “electronic” communications. This legislative histoiy accompanying the 1994 amendment strongly indicates that the radio portion of cordless telephones should be considered an “electronic communication” as defined by 18 U.S.C.S. §2510. H.R. Rep. No. 103-827, 103rd Cong. 2d sess., reprinted in 1994 U.S. Code Cong. & Admin. News 3489, 3490, 3492, 3498. See also U.S. v. Pervaz, 11 F.3d 1 (1st Cir. 1997) (applies amended statute to the radio portion of cellular phones). Pursuant to 18 U.S.C.S. §2511, the private interception of an electronic communication is unlawful and may be prosecuted either civilly or criminally.[1]
18 U.S.C.S. §2515 explicitly prohibits the use of any intercepted wire or oral communication in “any trial, hearing, or other proceeding in or before any court...” 18 U.S.C.S. §2515. This exclusionsaiy provisions has been strictly enforced to prevent any governmental interceptions accomplished illegally. Gelbard v. United States, 408 U.S. 41, 47, 52 (1972). Unlike the Massachusetts statute, the federal suppression provision has been held to apply to both public and private interceptions. See United States v. Vest, 813 F.2d 477, 479-80 (1st Cir. 1987); In re Grand Jury, 111 F.3rd 1066, 1077-78 (3rd Cir. 1997); But see United States v. Murdock, 63 F.3d 1391, 1401 (6th Cir. 1995) (criticizing Vest and adopting a “clean hands” exception for governmental use of private interceptions).
The suppression provision, however, is limited to wire or oral communications. While Congress expanded the criminal and civil penalty provisions of §2511 to include “electronic” communications, Congress did not similarly expand the statutory suppression provisions of §2515. Congress has categorized the radio portion of a cordless telephone not as a wire or oral communication, but instead as an electronic communication. Thus, 18 U.S.C.S. §2515 does not apply in this case because that section does not cover electronic communications.
18 U.S.C.S. §2515 should be considered along with 18 U.S.C.S. §2518 (10) which allows for the suppression of “the contents of any wire or oral communication intercepted pursuant to this chapter [18 U.S.C.S. §§2510 et seq.].” 18 U.S.C.S. §2518(10). Once again, Congress has made no mention of electronic communications in this section. However, in the section immediately proceeding, the statute gives very specific instructions with regard to the admission of legally intercepted communications specifically including electronic communications. 18 U.S.C.S. §2518(9). This leads to the logical conclusion that electronic communications were purposely left out of 18 U.S.C.S. §2518(10) by Congress and that suppression does not apply to electronic communications.
For the above referenced reasons, the tape recording of the telephone conversation is admissible under federal statute.
CONCLUSION
The motion to suppress is ALLOWED as to the log of the intercepted calls, (i.e. the lower half of Exhibit 1). The motion is DENIED in all other respects.

 The defendant’s excellent and extensive brief argues that the radio portion of a cordless phone conversation should be considered a “wire” communication after the 1994 amend *459 ment of §2410(1). This argument is unavailing. Congress took pains to distinguish between “wire" and “electronic” communications. Compare §2510(1) and (12). The radio broadcast between handset and receiver fits most comfortably within the definition of the “electronic” communication definition (i.e. “any transfer of. . . signals . . . sounds . . . transmitted in whole or in part by . . . radio . . .”). Indeed, the electronic communication provision is the only one that references radio communications. The legislative history which considers a cordless radio phone call to be a “wireless” communication supports this conclusion.